THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARIO SOTO, Defendant-Appellant.

First District (4th Division)   No. 1—93—1934

Opinion filed December 21, 1995.—Modified on denial of rehearing January 25, 1996.

434

Rita A. Fry, Public Defender, of Chicago (Henry Hams, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Michael P. Golden, Assistant State's Attorneys, of counsel), for the People.

JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, the defendant was convicted of aggravated stalking (720 ILCS 5/12—7.4(a)(3) (West 1992)) and sentenced to five years in prison. On appeal, he challenges the constitutionality of the Illinois stalking and aggravated stalking statutes. (720 ILCS 5/12—7.3, 12—7.4 (West 1992).) He further claims that the trial court erroneously relied on an order of protection as the sole piece of evidence that the defendant threatened the victim. The Illinois Supreme Court has upheld the constitutionality of the stalking and aggravated stalking statutes, rejecting the same arguments that the defendant raises in the present appeal. (*People v.*

*Bailey* (1995), 167 Ill. 2d 210, 657 N.E.2d 953.) Therefore, we focus solely on the issue of whether an order of protection can serve as the sole piece of evidence of a threat, as the trial court found and as the State argues on appeal. We conclude that the mere existence of an order of protection did not constitute evidence sufficient to prove beyond a reasonable doubt that the defendant threatened the victim. Therefore, we reverse the defendant's conviction.

At trial, Julia Powell testified that she had been married to the defendant, Mario Soto, since 1982 and they had three children. She also testified that on September 4, 1992, she met her children at the train station because they had been visiting California with the defendant. Powell said that she later discovered that the defendant left some personal items among the children's things. At the time, Powell and the defendant were living apart.

Around 5 p.m. on September 5, 1992, Powell received a phone call from the defendant. She testified that the defendant said that he wanted to see her. The defendant further said that he was coming to talk to her. Powell told him not to come and left the house. Powell testified that when she returned home at 9 p.m., she saw the defendant walking toward her. She testified that the defendant grabbed her arm and wrist, demanding his belongings. Powell pulled away from him and called the police. She testified that she did not have the defendant's personal items in her possession at that time.

On September 6, 1992, Powell and her son Mario drove to the home of Powell's friend, Debra Wilson. As Powell stood outside the car calling to her friend, she turned and saw the defendant running toward her. She then began running toward Wilson's house, but the defendant grabbed her arms and wrist. He again demanded his belongings. She testified that she screamed at the defendant to let her go, but he pulled out a small, dark gun and said that he had something for her. He then took a clip out of his pocket and tried to place it in the gun. Powell ran upstairs into Wilson's home.

From a window, Powell watched as the defendant rummaged through her car. He then smashed nearly all of her car windows with a crowbar and pulled out wires from under the hood. The defendant left the scene with a friend. Later, Powell discovered that her telephone book and an order of protection were missing from her car. On cross-examination, Powell denied that the gun merely fell onto the ground.

Next, Debra Wilson, Mario Powell, and two police officers testified on behalf of the State. Their testimony substantially corroborated that of the victim.

The State also submitted an order of protection dated May 18,

1992, which the court entered into evidence. The order does not state the reason that it was issued and the State presented no testimony concerning the circumstances leading up to the issuance of the order. The State then rested.

Testifying on his own behalf, the defendant stated that when Powell met him at the train on September 4, 1992, he left one of his bags in her car and she agreed to return it the following day. He also testified that Powell gave him a ride to a friend's house and that he left his gun with her because he did not want to bring it along.

The defendant explained that on September 5, 1992, he called Powell around 5 p.m. to ask for his things, indicating that he planned to go to her home. He testified that Powell told him not to come. He then went to Powell's residence, but did not see her and left. The defendant testified that he later returned to retrieve a wallet that he lost during the first visit. He stated that as he left the house he saw Powell pulling up in her car. He stated that Powell returned the gun he had given her on the previous day. The defendant admitted that he grabbed Powell by the wrist and said that he wanted to talk to her.

The defendant further testified that on the night of September 5, 1992, he slept at his friend's grandmother's house located one block from Debra Wilson's residence. He stated that on September 6, he went to a phone booth to call Powell and while he was on his way back he saw Powell drive up to Wilson's home. The defendant claimed that he had no idea that Powell was going to visit Wilson. He testified that he again asked Powell for his belongings and an argument ensued. He further testified that when Powell ran away from him, he ran after her and his gun fell out of his shorts. The defendant admitted that he broke Powell's car windows, but he denied that he threatened Powell with the gun or waited for her at Wilson's apartment.

Following closing arguments, the court found the defendant guilty of stalking, aggravated stalking and criminal damage to property. The court determined that the stalking charge merged with the aggravated stalking charge and sentenced him to five years in prison.

The Illinois stalking statute in effect at the time the defendant was charged provided in relevant part:

"(a) A person commits stalking when he or she transmits to another person a threat with the intent to place that person in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint, and in furtherance of the threat knowingly does any one or more of the following acts on at least 2 separate occasions:

(1) follows the person, other than within the residence of the defendant;

(2) places the person under surveillance by remaining present outside his or her school, place of employment, vehicle, other place occupied by the person, or residence other than the residence of the defendant." 720 ILCS 5/12—7.3 (West 1992).

Further, the aggravated stalking statute in effect provided in relevant part:

"(a) A person commits aggravated stalking when he or she, in conjunction with committing the offense of stalking, also does any of the following:

\* \* \*

(3) violates a temporary restraining order, an order of protection, or an injunction prohibiting the behavior described in subsection (b)(1) of Section 214 of the Illinois Domestic Violence Act." 720 ILCS 5/12—7.4(a)(3) (West 1992).

On appeal, the defendant argues that the State failed to establish the predicate threat beyond a reasonable doubt. In rendering its decision, the trial court stated:

"[T]here already is an order of protection meaning that [the defendant] has already threatened [Powell and her children] sometime in the past and now he's got a gun out there on the street."

The defendant acknowledges that an order of protection dated May 18, 1992, was entered into evidence. He contends, however, that the order standing alone cannot constitute evidence sufficient to support a finding that he threatened Julia Powell beyond a reasonable doubt.

In response, the State maintains that the trial court correctly held that the May 18, 1992, order of protection is sufficient evidence that the defendant threatened Powell prior to September 5, 1992. The State argues that the defendant's acts on September 5 and 6, 1992, were performed "in furtherance of" the threat communicated to Powell before May 18, 1992. The State does not suggest that the defendant threatened Powell at any other time. Rather, the State argues that the trial court relied on the facts which served as the basis for the May 1992 order of protection. However, it is unable to point to any evidence in the record which supports this contention.

We note that in its brief the State contends that the defendant threatened to kill Powell on April 25, 1992, and, as support, it directs us to review the testimony offered at the sentencing hearing. However, the State's references to the sentencing hearing are irrele-

438

vant to the issue of whether it offered sufficient proof at trial to support the defendant's conviction.

As a reviewing court, we must determine whether the evidence when viewed in the light most favorable to the prosecution is sufficient to convince any rational trier of fact that the elements of the offense have been proved beyond a reasonable doubt. (*People v. Krawiec* (1994), 262 Ill. App. 3d 152, 634 N.E.2d 1173.) It is the State's burden to prove the essential elements of a crime beyond a reasonable doubt. (*In re Winship* (1970), 397 U.S. 358, 361-63, 25 L. Ed. 2d 368, 373-74, 90 S. Ct. 1068, 1071-72; *People v. Wiley* (1995), 165 Ill. 2d 259, 651 N.E.2d 189; *People v. Rothermel* (1982), 88 Ill. 2d 541, 431 N.E.2d 378.) A conviction based on a record lacking sufficient evidence as to a crucial element of the offense charged violates due process. *Vachon v. New Hampshire* (1974), 414 U.S. 478, 480, 38 L. Ed. 2d 666, 669, 94 S. Ct. 664, 665.

■ In order to prove that an accused committed the offense of aggravated stalking, the State first had to prove that the defendant committed the crime of stalking. (See 720 ILCS 5/12—7.4(a) (West 1992).) The first element of the offense of stalking that the State must prove beyond a reasonable doubt is that the defendant transmitted a threat to the victim. (See *Krawiec*, 262 Ill. App. 3d 152, 634 N.E.2d 1173; see also Illinois Pattern Jury Instructions, Criminal, No. 11.92 (3d ed. Supp. 1995) ("To sustain the charge of stalking, the State must prove the following propositions: *First Proposition*: That the defendant transmitted a threat ***").) Next, the State must prove that the defendant made the threat with the intent to place the victim in reasonable apprehension of harm. Further, the State must show that the defendant acted "in furtherance of the threat." 720 ILCS 5/12—7.3(a) (West 1992).

■ In the present case, viewing all of the evidence in the light most favorable to the State, a rational trier of fact could not have found the defendant guilty of aggravated stalking beyond a reasonable doubt. (See *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) We conclude that the State failed to present sufficient evidence that the defendant threatened Powell prior to September 5, 1992. The May 18, 1992, order of protection does not indicate the reason that it was issued. Under the Illinois Domestic Violence Act, the allegations of a petition seeking an order of protection must be proven by a preponderance of the evidence. (750 ILCS 60/205 (West 1992); see also *In re Marriage of Gordon* (1992), 233 Ill. App. 3d 617, 599 N.E.2d 1151.) The standard of proof which must be met at such a hearing does not satisfy the quantum of proof that our system of justice demands in order to sustain a criminal conviction. Standing

alone, the May 18, 1992, order of protection does not constitute sufficient evidence that the defendant threatened Julia Powell.

Further, we conclude that nothing in the record shows that the defendant expressed an intent to harm Powell prior to September 5, 1992. Neither Powell nor any other witness testified that the defendant threatened her prior to September 5, 1992. By his own admission, the defendant concedes that he physically grabbed Powell's arms and wrists on September 5 and 6. However, nothing in the record shows that these acts were in furtherance of a prior threat.

The requirements of the statute are specific—the State must prove a predicate threat transmitted to the victim. A defendant's right to require the State to prove every element of the crime charged beyond a reasonable doubt may not be compromised. Therefore, we reverse the defendant's conviction for aggravated stalking.

■ Further, the notice of appeal indicates that the defendant appealed his conviction for criminal damage to property. However, he never raised this issue in his brief; therefore, we deem this issue waived. (*People v. Webber* (1992), 234 Ill. App. 3d 641, 600 N.E.2d 68; *People v. Cooper* (1975), 30 Ill. App. 3d 112, 332 N.E.2d 166.) Nonetheless, we note that the order of sentence does not reflect the court's finding of guilt on the charge of criminal damage to property, and the terms of the sentence are not otherwise clear from the record. Given the scope of our power under Supreme Court Rule 366 (134 Ill. 2d R. 366), we remand this case, directing the trial court to resentence the defendant for criminal damage to property.

Reversed and remanded for resentencing.

CAHILL and S. O'BRIEN, JJ., concur.