**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0678n.06
Filed: November 5, 2008

No. 06-3477

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CHRISTOPHER DIXON, | ) | |
| | ) | |
| **Petitioner-Appellant,** | ) | **ON APPEAL** FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| ERNIE L. MOORE, Warden, | ) | |
| | ) | **O P I N I O N** |
| **Respondent-Appellee.** | ) | |
| | ) | |

**Before: MOORE and WHITE, Circuit Judges; and VINSON,\* District Judge.**

**KAREN NELSON MOORE, Circuit Judge.** Petitioner-Appellant Christopher Dixon

appeals the district court's denial of his petition for a writ of habeas corpus. Dixon was convicted

in Ohio state court of aggravated robbery and felony murder, based on the shooting of his co-felon

by a victim of the failed robbery, and the Ohio appellate courts upheld his conviction. After the

district court denied his habeas petition, we granted a certificate of appealability "as to the

constitutionality of Dixon's conviction for felony murder." On appeal, Dixon argues that his felony-

murder conviction violated his right to due process under the Fourteenth Amendment because there

was not sufficient evidence to prove beyond a reasonable doubt that the death was a proximate result

---

\*The Honorable C. Roger Vinson, United States District Judge for the Northern District of
Florida, sitting by designation.

of Dixon's unlawful conduct. For the reasons discussed below, we **AFFIRM** the district court's

denial of the habeas petition.

## I. BACKGROUND

**A. Facts**

Dixon does not dispute the underlying facts of his conviction as laid out by the Ohio Court

of Appeals:

> On September 30, 1999, Dixon and his cousin Sherman Lightfoot made plans to rob the Jiffy Lube located at 3931 Salem Avenue in Dayton, Ohio. In preparation for the robbery, Dixon and Lightfoot obtained latex gloves and "Jason" masks, which were popularized in the movie, "Friday the 13th." At approximately 6:15 p.m., the two men drove a blue Camaro to the Jiffy Lube, parking it across the street. Dixon was wearing an orange-colored hooded sweatshirt, while Lightfoot was wearing a white hooded sweatshirt.
>
> Dixon and Lightfoot entered the Jiffy Lube and Dixon grabbed one of the employees, Gregory Anderson. Lightfoot pointed a gun in Anderson's face, and the two robbers demanded to know where the money was located. Anderson told them it was in the office. Dixon and Lightfoot then took Anderson to the office. Anderson told them that only the manager had the key to the drawer where the money was kept. Lightfoot instructed Anderson to call for the manager. Anderson complied and the store manager, Michael McDonald, came to the office. At that point Lightfoot pointed the gun in McDonald's face.
>
> McDonald began struggling with Lightfoot over the gun. During the struggle, the gun fired once. When Lightfoot momentarily stumbled and fell backward during the struggle, McDonald gained control over the gun. Lightfoot immediately regained his balance, and both he and Dixon ran out of the store. McDonald fired several shots in the direction of the fleeing suspects. Dixon ran back to the Camaro, got in and sped away. Lightfoot fell to the ground in the parking lot as a result of a gunshot wound to the head. Lightfoot subsequently died at Good Samaritan Hospital. After being arrested, Dixon admitted to police his involvement in the Jiffy Lube robbery.

*State v. Dixon*, No. 18582, 2002 WL 191582, at *1 (Ohio Ct. App. Feb. 8, 2002).[1]

---

[1]At oral argument, the Warden argued that the state had presented evidence at trial indicating that the shot that killed Lightfoot was actually fired by Lightfoot when the gun went off in the struggle with McDonald. Although a court reviewing for sufficiency of the evidence should take the

**B. State Proceedings**

On October 7, 1999, Dixon was indicted on one count of aggravated robbery, in violation of Ohio Rev. Code § 2911.01(A)(1), and one count of felony murder, in violation of Ohio Rev. Code § 2903.02(B), each with a firearm specification. Because Dixon did not enter a plea, the trial court entered a plea of not guilty on his behalf. Before trial, Dixon filed a motion to dismiss the felony-murder charge on the grounds that the state violated his rights to equal protection and due process by charging him with felony murder rather than involuntary manslaughter, but the court denied this motion and proceeded to trial. At the close of the state's case, Dixon moved for acquittal on the felony-murder charge, renewing these objections and requesting that the case go forward only on a charge of involuntary manslaughter. This motion also was denied by the trial court.

The trial court instructed the jury that "[c]ause is an essential element of the offense of felony murder" and explained in part that "[t]he defendant is responsible for the natural consequences of the defendant's unlawful act even though death was also caused by the intervening act of another person." Joint Appendix ("J.A.") at 952 (Trial Tr. at 603). After deliberating a few hours, the jury sent a note asking for "clarification" of "knowingly and foreseeable," but, after consulting with counsel for both parties, the court declined to provide any further clarification. J.A. at 961-64 (Trial Tr. at 612-15). The jury found Dixon guilty on all charges. Dixon received a sentence of fifteen years to life for felony murder and ten years for aggravated robbery, to be served concurrently. The

---

evidence in the light most favorable to the prosecution, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), the state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1). Moreover, issues not raised in the briefs and first asserted at oral argument are deemed waived. *See United States ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 450 n.6 (6th Cir. 2008).

firearm specifications were merged, resulting in an additional three-year consecutive sentence, for a total sentence of eighteen years to life.

Dixon appealed his conviction to the Ohio Court of Appeals, raising four assignments of error:

I.   Defendant-Appellant's constitutional right to equal protection under the law was violated when he was convicted of felony murder pursuant to R.C. § 2903.02(B).

II.  The trial court erred to Defendant-Appellant's prejudice when it overruled his pre-trial motion to dismiss and Criminal Rule 29 motions for acquittal.

III. The trial court abused its discretion and erred to Defendant-Appellant's prejudice when it overruled his requests for jury instructions.

IV.  Defendant-Appellant's conviction under R.C. 2903.02(B) is against the manifest weight of the evidence.

J.A. at 173 (Appellant Br. at 4). On February 8, 2002, the Ohio Court of Appeals overruled the assignments of error and affirmed Dixon's conviction. The court looked to previous Ohio court of appeals cases interpreting the involuntary-manslaughter statute, which contains language similar to the felony-murder statute, finding that both statutes follow "a proximate cause standard of criminal liability." *Dixon*, 2002 WL 191582, at *5. The court found that proximate cause requires that the defendant's conduct both be the "cause in fact of the result," and, "when the result varied from the harmed [sic] intended or hazarded, it must be determined that the result achieved was not so extraordinary or surprising that it would be simply unfair to hold the defendant criminally responsible for something so unforeseeable." *Id*. at *6 (quoting *State v. Lovelace*, 738 N.E.2d 418, 425 (Ohio Ct. App. 1999)). The court therefore found that it was not necessary that Dixon "be able to foresee the precise consequences of his conduct; only that the consequences be foreseeable in the

4

sense that what actually transpired was natural and logical in that it was within the scope of the risk created by Dixon." *Id*. As the court further explained,

> The term "proximate result" as it is used in the definition of involuntary manslaughter resembles the concept of "proximate cause" in that the defendant will be held responsible for those foreseeable consequences that are known to be, or should be known to be, within the scope of the risk created by his conduct. "[A] defendant cannot be held responsible for consequences no reasonable person could expect to follow from his conduct; [but] he will be held responsible for consequences which are direct, normal, and reasonably inevitable—as opposed to extraordinary or surprising—when viewed in the light of ordinary experience." Thus, if death could be reasonably anticipated by an ordinarily prudent person as likely to result from the circumstances created by the defendant in the commission of a felony, he may be convicted of involuntary manslaughter *regardless of whether he intended to cause a death*.

*Id.* (quoting *State v. Bumgardner*, No. 97CA103, 1998 WL 892120, at *8 (Ohio Ct. App. Aug. 21, 1998)) (alteration in original; citations omitted).

In discussing Dixon's first and second assignments of error, the state court of appeals found that Lightfoot's death was a proximate result of Dixon's conduct in robbing the Jiffy Lube:

> Clearly, the shooting which killed Lightfoot was within the scope of the risk created by Dixon when he and Lightfoot robbed the Jiffy Lube at gunpoint. Dixon planned the robbery with Lightfoot, was an active participant during the robbery, and knew a deadly weapon was being employed to facilitate the robbery. The natural inclination of persons present during a robbery to forcibly defend themselves, their family and friends, and their property from theft and criminal aggression is a primal human instinct. Every robber or burglar knows when he attempts his crime that he is inviting dangerous resistance. Add to this highly charged atmosphere the use of a firearm to facilitate the robbery, and the risk of serious physical harm or death to any person present, be it the intended victims, bystanders, or the wrongdoers themselves, becomes highly foreseeable.

> The causal relationship between Dixon's criminal conduct and Lightfoot's death was not so remote or improbable as to be unforeseeable by any reasonable person. The death of Lightfoot was a natural, logical, and reasonably foreseeable consequence of the armed robbery that Dixon and Lightfoot were committing at the time, when viewed in the light of ordinary human experience. Accordingly, pursuant to the proximate cause standard of criminal responsibility adopted in R.C.

2903.02(B), Dixon may be held criminally liable for the death of his accomplice, Lightfoot, which he caused as a proximate result of committing or attempting to commit aggravated robbery.

*Id*. at \*7 (citations omitted). Turning to Dixon's fourth assignment of error, that the felony-murder conviction was "against the manifest weight of the evidence," the court first noted that, because this issue had not been raised at the trial court, it would review only for plain error. *Id*. at \*9. ("Although Dixon moved for acquittal pursuant to Crim. R. 29 at the close of the State's case, that motion was not based upon any alleged insufficiency in the evidence . . . .") The court overruled this assignment of error, finding that the state had proven proximate cause beyond a reasonable doubt:

> We have previously discussed in detail, in disposing of the first and second assignments of error, the fact that the death of Dixon's accomplice, Lightfoot, was clearly within the scope of the risk created by Dixon when he, acting in concert with Lightfoot, robbed the Jiffy Lube at gunpoint. When viewed in the light of ordinary experience, Lightfoot's death was a natural, logical, and reasonably foreseeable consequence of Dixon's unlawful conduct. We will not repeat our previous discussion here. Suffice it to say, that in viewing the evidence presented by the State in a light most favorable to the State, which we must do when determining the sufficiency of the evidence, a rational trier of fact could find beyond a reasonable doubt that Dixon "caused" Lightfoot's death as a proximate result of committing or attempting to commit aggravated robbery. The trial court did not commit plain error in convicting Dixon based upon the evidence presented.

*Id*. at \*9 (citations omitted). Dixon attempted to make further state-court challenges to his conviction, but these were denied.

## C. Federal Habeas Proceedings

On August 20, 2004, Dixon, acting pro se, filed a petition for writ of habeas corpus in the U.S. District Court for the Southern District of Ohio, asserting seven grounds for relief:

> Ground one: Petitioner's Constitutional Right to Equal Protection under the law was violated.

6

Ground two: Petitioner's Constitutional Rights were violated pursuant to the Sixth Amendment & Fourteenth Amendment to the United States Constitution.

Ground three: The Trial Court abused its discretion and erred when it overruled a request for jury instructions.

Ground four: Petitioner's Sixth & Fourteenth Amendment rights were violated when he was charged with Felony Murder when an accomplice is killed by the victim's unjustified unlawful force.

Ground five: Petitioner was prejudiced to a fair trial when incomplete jury instructions on Felony-Murder were given in violation for the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

Ground six: The Ohio State Supreme Court sua sponte [sic] Petitioner's amicus curiae petition in violation of the Fourteenth Amendment to the United States Constitution.

Ground seven: The Second Appellate Court of Appeals violated this Petitioner's rights pursuant to the Sixth and Fourteenth Amendments of the United States Constitution in overruling his Application to Reopen pursuant to Appellate Rule 26(B).

J.A. at 9-11 (Petition at 5-7) (minor errors corrected). In its answer and return of writ, the Warden viewed ground four as the same equal-protection argument raised in grounds one and two, and argued that this issue had already been decided by the Ohio Court of Appeals as a matter of state law. The petition was referred to a magistrate judge, who noted in discussing Dixon's equal-protection claims that his argument that felony murder "should not be expanded beyond the common-law definition of felony murder to include . . . Dixon's involvement in an aggravated robbery where his accomplice was killed by a victim" was a matter of state law not cognizable in a habeas proceeding. J.A. at 290-92 (Mag. J. Report at 10-12). The magistrate judge recommended that the petition be denied on both procedural and substantive grounds and that a certificate of appealability not be

issued. Over Dixon's objections, the district court adopted the report and recommendations in their entirety.

This court declined to issue a certificate of appealability as to the issues decided by the district court, but "since Dixon received life imprisonment, because during the course of the robbery the gas station attendant killed Dixon's confederate, the court grant[ed] a certificate of appealability as to the constitutionality of Dixon's conviction for felony murder." J.A. at 307 (Order 5/7/07 at 2).

## II. ANALYSIS

### A. Standard of Review

We review de novo the district court's denial of a habeas petition. *Joseph v. Coyle*, 469 F.3d 441, 449 (6th Cir. 2006), *cert. denied*, --- U.S. ---, 127 S. Ct. 1827 (2007). Because Dixon's petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), our review of the state court's decision is limited:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). One way that a state-court decision may be an unreasonable application of clearly established federal law is if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Joseph*, 469 F.3d at 450 (quoting *Williams*

8

*v. Taylor*, 529 U.S. 362, 407-08 (2000)).  Factual issues determined by the state court "shall be presumed correct" unless rebutted by "clear and convincing evidence."  § 2254(e)(1).

## B.  The Constitutionality of Dixon's Felony-Murder Conviction

Dixon argues that his felony-murder conviction was an unreasonable application of the Due Process Clause of the Fourteenth Amendment, as clearly established in *Jackson v. Virginia*, 443 U.S. 307 (1979), because no reasonable trier of fact could have found beyond a reasonable doubt that the state established proximate cause, an essential element of felony murder under Ohio law.  Because a reasonable trier of fact could have found beyond a reasonable doubt that Lightfoot's death was a reasonably foreseeable consequence of Dixon's commission of robbery, Dixon's argument must fail.

In *Jackson*, the Supreme Court held that "the due process standard . . . constitutionally protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt."  443 U.S. at 313-14.  That is, a conviction can only stand if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id*. at 319.

It is undisputed that, under Ohio law, proximate causation is an essential element of felony murder.  The felony-murder provision of the Ohio murder statute mentions "cause" and "proximate result":

> No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

9

Ohio Rev. Code § 2903.02(B). Based on prior decisions interpreting similar language in the involuntary-manslaughter statute,[2] the Ohio Court of Appeals held that the felony-murder statute "adopt[s] a proximate cause standard of criminal liability." *Dixon*, 2002 WL 191582, at *5. Neither party disagrees with this conclusion, and, regardless, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

> The basic contours of the element of proximate cause in Ohio also are undisputed:
>
> It is also well-established [in Ohio] that a "defendant cannot be held responsible for consequences no reasonable person could expect to follow from his conduct," and that a person should only be held criminally responsible for consequences "which are *direct, normal, and reasonably inevitable*—as opposed to extraordinary or surprising—when viewed in the light of ordinary experience."

Dixon Br. at 18 (quoting *Patterson v. Haskins*, 316 F.3d 596, 605 (6th Cir. 2003)). This is consistent with the Ohio Court of Appeals's statement that Dixon may be held responsible only for "consequences [that were] foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by Dixon." *Dixon*, 2002 WL 191582, at *6.

Dixon argues that Lightfoot's death was not foreseeable because "McDonald's use of deadly force was unjustified as a matter of Ohio law," Dixon Br. at 19, and asserts that McDonald's "vigilantism" was not "normal and reasonably inevitable," Dixon Reply Br. at 4. Although we offer no opinion as to the point at which a crime victim's resistance becomes an unforeseeable consequence of the defendant's crime, we must conclude that the Ohio Court of Appeals was not unreasonable in finding that the facts here do not present such a case. Even assuming that

---

[2]Under the involuntary-manslaughter statute, "[n]o person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony." Ohio Rev. Code § 2903.04(A).

McDonald's conduct was illegal, this is not determinative of proximate causation under Ohio law. *See State v. Lovelace*, 738 N.E.2d 418 (Ohio Ct. App. 1999) (affirming involuntary-manslaughter conviction and concluding that a defendant who had been involved in a high-speed chase proximately caused the death of a motorist struck by a police car that sped through stop signs on the way to join the chase, even though the police officer violated police policy and was later convicted of negligent vehicular homicide); *id*. at 427 ("Simply because a person's conduct is unreasonable or even criminal does not make it unforeseeable."). Further, although McDonald's action may now seem excessive given that Dixon and Lightfoot were fleeing, it was not unforeseeable that McDonald, who had been held up at gunpoint, would, in the heat of the moment, fight back past the precise point at which resistance became unnecessary for self-protection. *See State v. Chambers*, 373 N.E.2d 393, 397 (Ohio Ct. App. 1977) (finding proximate cause and affirming involuntary-manslaughter conviction of defendant whose confederate was shot and killed while the two were fleeing from a botched home invasion).

### III. CONCLUSION

Because we cannot say that the Ohio Court of Appeals was unreasonable in concluding that the state presented sufficient evidence to prove beyond a reasonable doubt that Dixon's conduct proximately caused Lightfoot's death, we **AFFIRM** the district court's denial of Dixon's petition for a writ of habeas corpus.