**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0675n.06

**No. 06-6444**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Oct 08, 2009**
LEONARD GREEN, Clerk

| | |
|---|---|
| **WILLIE GENE JENKINS,** ) | |
| ) | |
| **Petitioner-Appellant,** ) | |
| ) | |
| **v.** ) | **On Appeal from the United** |
| ) | **States District Court for the** |
| **THOMAS DAILEY, WARDEN,** ) | **Western District of Kentucky** |
| ) | |
| **Respondent-Appellee.** ) | |

Before: BATCHELDER, Chief Judge; and BOGGS and COOK, Circuit Judges

**BOGGS, Circuit Judge.** Willie Gene Jenkins appeals from the district court's denial of his petition for a writ of habeas corpus. Jenkins argues that his conviction under Kentucky's criminal-syndication statute violated his due process right not to be convicted of a crime "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," *In re Winship*, 397 U.S. 358, 364 (1970). Jenkins argues that proof beyond a reasonable doubt was impossible as a matter of law because, under Kentucky's codification of the Rule of Consistency, he could not be convicted of criminal syndication if his co-defendants have been acquitted or have been discharged under circumstances amounting to an acquittal. We affirm the district court's denial of the petition.

**I**

No. 06-6444
Jenkins v. Dailey

In 1998, Jenkins was indicted by a Jefferson County Grand Jury on one count of criminal syndication under Ky. Rev. Stat. § 506.120, one count of being a persistent felony offender, and numerous counts of criminal possession of a forged instrument and theft by deception. Four co-defendants were indicted along with Jenkins on one count of criminal syndication each, and various counts of criminal possession of forged instruments, theft by deception, and other related offenses. Prior to Jenkins's trial, all four co-defendants entered into plea agreements with the Commonwealth of Kentucky: each pleaded guilty to various counts of theft by deception and/or criminal possession of a forged instrument in exchange for the Commonwealth's recommendation of a five-year sentence, to be probated. The Commonwealth conditioned its sentence recommendation on each co-defendant's cooperation in the prosecution of other co-defendants. The Commonwealth also dismissed the criminal-syndication charge against all of Jenkins's co-defendants.

In March 2001, Jenkins was tried and convicted by a jury in Jefferson Circuit Court ("trial court") of sixteen counts of criminal possession of a forged instrument, eight counts of theft by deception over $300, one count of being a persistent felony offender, and one count of criminal syndication. After his conviction, Jenkins accepted a plea agreement waiving the sentencing phase in exchange for the Commonwealth's recommendation of a total thirty-year sentence. The plea agreement specified that all sentences were to run concurrently, and that the total sentence recommended resulted from the criminal-syndication conviction, which carried a sentence of twenty

years and was enhanced by Jenkins's Persistent Felon Offender ("PFO-I") status to thirty years.[1] The judgment of conviction, entered on May 11, 2001, was consistent with the plea agreement.

Jenkins moved for post-conviction relief before the trial court pursuant to Ky. RCr 11.42 in May 2002, seeking to vacate his sentence on three grounds. He argued that his sentence was disproportionately long compared to those of his co-defendants, that he received ineffective assistance of counsel, and that his plea was not intelligently and voluntarily made. A public advocate, subsequently appointed to represent Jenkins, filed a supplement to Jenkins's original motion, seeking relief pursuant to Ky. R. Civ. P. 60.02 (e) and (f), based on the alleged severity of Jenkins's sentence. The trial court denied Jenkins's Ky. RCr 11.42 motion, and held that he was barred from seeking relief under Ky. R. Civ. P. 60.02.

Jenkins appealed to the Court of Appeals for the Commonwealth of Kentucky. According to that court, Jenkins argued, *inter alia*, that the trial court misinterpreted his argument with respect to the disproportionate length of the sentence and the legality of his conviction of criminal syndication. The court of appeals stated that upon a review of the trial record, it "fail[s] to see where the trial court misinterpreted Jenkins' argument," but did not decline to address the argument Jenkins claimed to have made before the trial court: that the conviction for criminal syndication was improper because the Commonwealth did not sustain its burden of showing that five or more persons collaborated to promote or engage in the commission of the crime. Specifically, Jenkins argued that

---

[1]Each count of criminal possession of a forged instrument and theft by deception over $300 carried a five-year sentence, enhanced by the PFO-I status to twenty years per count. Thus, the recommended thirty-year sentence was ten years longer than it would ostensibly be without the criminal-syndication count.

"there cannot be a conviction of 'Criminal Syndication' when he was in fact the only defendant convicted in the present case." The Kentucky Court of Appeals affirmed the trial court, and the Supreme Court of Kentucky subsequently denied discretionary review.

Jenkins filed a petition for a writ of habeas corpus in federal district court. In relevant part, Jenkins argued that, first, "it was improper for the trial court to allow prosecution of Petitioner for criminal syndication when four(4) of the five(5) involved, had their criminal syndication charge dismissed prior to Petitioner being found guilty," second, "it is prerequisite that all five(5) or more persons charged with criminal syndication be convicted or at a minimum still be legally charged with criminal syndication before one or any can be convicted" of it, and third, Jenkins was "not proved to be found guilty beyond a reasonable doubt because the Commonwealth failed to present evidence that [any] other than Petitioner was alleged to be part of criminal syndication, because Petitioner was the only accused to be found guilty" of the crime. The district court treated the three arguments as presenting essentially one claim, that Jenkins's "conviction was unlawful under Kentucky law."[2] The district court denied the petition on September 25, 2006. Jenkins appealed, and we granted a certificate of appealability solely on the issue of whether "there was insufficient evidence to support his conviction for criminal syndication because he was the only person found guilty of the offense."

**II**

**A**

_____

[2]Jenkins also argued that his counsel was ineffective for failing to move for a directed verdict when the Commonwealth failed to "prove that the required elements of criminal syndication were in place."

The district court's decision to deny habeas corpus relief is reviewed *de novo*. *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus shall not be granted unless a petitioner shows that the state's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254. A state-court decision is contrary to clearly established federal law if "the state court applies a rule that contradicts the governing law" as set forth by the Supreme Court, or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a [different] result." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "A state-court decision is an unreasonable application of clearly established federal law if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Tucker*, 541 F.3d at 656 (quotation marks and citations omitted). Moreover, "[a]voiding these pitfalls does not require [a state court's] citation of [Supreme Court] cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

**B**

Jenkins claims that the Kentucky courts unreasonably applied the established principle of federal law that a state court may not convict a defendant "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime which he is charged," *In re Winship*, 397 U.S.

358, 364 (1970). Proof beyond a reasonable doubt was impossible as a matter of law, Jenkins argues, because a defendant may not be convicted of "a crime requiring the participation of more than one individual – such as criminal syndication – if the other participants have been acquitted or have been discharged under circumstances amounting to an acquittal." Appellant's Br. at 12. The Kentucky law that allegedly made proof beyond a reasonable doubt legally impossible is that state's codification of the common-law Rule of Consistency. The codified Kentucky rule states that "[a] defendant cannot be convicted of conspiracy if all of his co-conspirators have been acquitted or *discharged under circumstances amounting to an acquittal*." Ky. Rev. Stat. Ann. § 506.070(3) (emphasis added). Jenkins asserts that the allegedly unconditional dismissal of the criminal-syndication charge in each of his co-defendant's plea agreements constituted a "discharge[] under circumstances amounting to an acquittal." Thus, he concludes, under Kentucky's Rule of Consistency, the charge of criminal syndication against him was legally insufficient, and should not have been submitted to the jury.

"Under the *Winship* decision, it is clear that a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim." *Jackson v. Virginia*, 443 U.S. 307, 321 (1979). The district court determined, however, that Jenkins's insufficiency-of-evidence claim amounted to an assertion that "the courts of Kentucky improperly applied or interpreted Ky. Rev. Stat. 506.120(3)," and that "[a] federal court cannot issue a writ of habeas corpus on the basis of a perceived error of state law." *Jenkins v. Dailey*, 2006 U.S. Dist. LEXIS 73477, at *3 (W.D. Ky. Sept. 22, 2006) (internal quotation marks and citations omitted).

No. 06-6444
Jenkins v. Dailey

A challenge to the sufficiency of evidence for a state conviction necessarily involves examining state law to some extent. As the Supreme Court explained in *Jackson*, in considering such claims, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. This standard "must be applied with explicit reference to the substantive elements of the criminal offense *as defined by state law*." *Jackson*, 443 U.S. at 324 n.16 (emphasis added). However, if the offense is not clearly defined by state law or interpreted by state courts, an attempt to interpret state law by a federal court risks "intru[ding] upon the power of the States to define criminal offenses," *ibid*. *See Sherrill v. Nicholson*, 545 F. Supp. 573, 575 (W.D. Ky. 1982) ("It is ordinarily not the province of [a federal court] to interpret criminal statutes; however, when a statute is clear on its face, interpretation by the highest court of the state is unnecessary.")

Thus, in each of the cases where federal courts reviewed a state conviction alleged to contradict the federal law of *Winship* and *Jackson* in habeas proceedings, the inquiry into the sufficiency of evidence required no interpretation of state law: the elements of the offense of conviction were clear, or prior decisions by highest state courts authoritatively resolved any ambiguity. In *Jackson*, the Supreme Court considered the sufficiency of evidence to support a finding of "specific intent," which was indisputably an element of first-degree murder under Virginia law. 443 U.S. at 324-25. Moreover, the rule of law applicable to the petitioner's claim in *Jackson* – that specific intent "may be formed at the moment of the commission of the unlawful act," and need not be harbored for any particular length of time – was "well settled" and affirmed

by Virginia's highest court. *Ibid.* (citing *Commonwealth v. Brown*, 90 Va. 671, 673 (Va. 1894)). *See also Dixon v. Moore*, 318 F. App'x 316, 321-22 (6th Cir. 2008) (reviewing an insufficiency-of-evidence claim with regard to an element of felony murder, where it "is undisputed that, under Ohio law, proximate causation is an essential element of felony murder," "[n]either party disagrees with this conclusion," and a "state court's interpretation of state law" bound the federal court); *Tucker v. Palmer*, 541 F.3d 652, 657 (6th Cir. 2008); *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006); *Hopson v. Foltz*, 818 F.2d 866, 1987 U.S. App. LEXIS 6596, at *4 (6th Cir. May 20, 1987) (table) (*per curiam*); *Sherrill*, 545 F. Supp. at 575.

By contrast, when a habeas petition is predicated upon just one of several plausible interpretations of underlying state law, federal courts have declined to review state convictions on insufficiency-of–evidence grounds. The Seventh Circuit's reasoning in *Curtis v. Mongtomery* is instructive. 552 F.3d 578 (7th Cir. 2009). The habeas petitioner in that case claimed that the state of Illinois did not prove every element of "aggravated stalking" beyond a reasonable doubt: under Illinois law, "aggravated stalking" required showing that an accused "places another person under surveillance," which was defined to mean "remaining present outside" the victim's home, school, or vehicle. *Id.* at 581. The petitioner claimed that "the State's evidence established that he was arrested *as he was approaching [victim']s car*, and thus, that he could not possibly have '*remained*' outside of it" for any appreciable period of time. *Ibid.* (emphasis added). The state appellate court disagreed and upheld his conviction, noting that the question of whether the "brief period Curtis was near [victim's] car . . . constituted surveillance" was a question for the jury. *Id.* at 582 (internal quotation marks omitted). The Seventh Circuit held that the petitioner was "impermissibly

attempting to use a petition for a writ of habeas corpus to press his preferred interpretation of Illinois law" as to the meaning of "remaining present," and that his claim was none the more cognizable in federal court if "recast[] . . . as [a] challenge[] to a state court's application of *Jackson*." *Id*. at 582.

It is evident that federal courts cannot entertain a collateral attack on a state conviction that requires a foray into ambiguous or unsettled areas of state law.[3] And Kentucky's criminal-syndication statute cannot be fairly characterized as unambiguous or settled. In particular, Jenkins's argument relies on three crucial – and contentious – interpretations of Kentucky law.

First, Jenkins asserts that "conspiracy" is a required element of criminal syndication, but this is far from clear from the plain text of the statute. The statute makes "*any* of the following" a crime when done "with the purpose to establish or maintain a criminal syndicate or to facilitate any of its activities":

(a) *Organize or participate in organizing* a criminal syndicate or any of its activities;

(b) *Provide material aid* to a criminal syndicate or any of its activities, whether such aid is in the form of money or other property, or credit;

---

[3]Even faced with a state law that has been authoritatively interpreted by a state's highest court, the Supreme Court has at times been reluctant to base its disposition of a habeas claim on that interpretation when the state court did not specify whether its authoritative construction had always been the law or was a new interpretation of the law. *Fiore v. White*, 528 U.S. 23, 24-25 (1999). The petitioner in *Fiore* sought to have his state conviction set aside on the basis of a law that the Pennsylvania Supreme Court has interpreted in a manner favorable to his claim after his conviction became final. The Supreme Court declined to rule on the merits of Fiore's habeas petition and invoked the state's certification procedure, explaining that "previously, Pennsylvania's lower courts had been divided in their interpretation," and it remained unclear "whether the Pennsylvania Supreme Court's [new] construction of the statute . . . stated the correct understanding of the statute at the time Fiore's conviction became final, or whether it changed the interpretation then applicable." *Id*. at 28-29.

(c) *Manage, supervise, or direct* any of the activities of a criminal syndicate, at any level of responsibility;

(d) *Knowingly furnish* legal, accounting, or other managerial services to a criminal syndicate;

(e) Commit, or conspire or attempt to commit, or act as an accomplice in the commission of, any offense of a type in which a criminal syndicate engages on a continuing basis;

(f) Commit, or conspire or attempt to commit or act as an accomplice in the commission of, any offense of violence; or

(g) Commit, or conspire or attempt to commit, or act as an accomplice in the commission of bribery . . . .

§ 506.120(1) (emphasis added). Only three of the seven criminal activities that constitute the offense explicitly mention conspiracy; and even there, a conspiracy is a requirement only as an alternative to commission of the act (i.e. "commit, *or* conspire"). The first four predicate acts, emphasized above, do not require a conspiracy on their face.

Nor can it be said that the definition of "criminal syndicate" unambiguously makes conspiracy an essential element of the offense. A "'criminal syndicate' means five (5) or more persons collaborating to promote or engage in any of the following on a continuing basis." "Collaboration," which is not defined in the statute, may mean "conspiracy."[4] However, it may well mean something else, even if only for the reason that the drafters chose to employ "collaborating"

---

[4]Under Kentucky law, "[a] person having the intention of promoting or facilitating the commission of a crime is guilty of criminal conspiracy when he: (a) Agrees with one (1) or more persons that at least one (1) of them will engage in conduct constituting that crime or an attempt or solicitation to commit such a crime; or (b) Agrees to aid one or more persons in the planning or commission of that crime or an attempt or solicitation to commit such a crime." Ky. Rev. Stat. Ann. § 506.040.

rather than "conspiring."[5]  Jenkins does not identify, nor can we locate, any state decisions that clearly identify *all* the essential elements of the criminal-syndication offense.[6]  Indeed, § 506.120 is described as so "significantly [different] from RICO that the extensive case law on that statute provides very little guidance on what constitutes 'engaging in organized crime' in Kentucky," and, because only "[a] few decisions have been rendered on the statute, . . . much remains to be resolved before the coverage of this offense is clear."  1-7 George G. Seelig, Kentucky Criminal Law and Procedure § 7-6.  Moreover, even if conspiracy were required to prove the existence of a criminal syndicate, a plain reading of the statute suggests that a defendant may be convicted of criminal syndication when he formed no conspiratorial relationship with anyone – if, for example, he provided "material aid" or "services" to a syndicate, of which he is not part.  *See* § 506.120(1)(b), (d).

---

[5] For example, one practice manual describes a criminal syndicate as "a criminal network of some sort, *more loosely connected than 'conspiracy*,' but connected nonetheless."  1-7 George G. Seelig, Kentucky Criminal Law and Procedure § 7-6 (emphasis added). *See also Commonwealth v. Phillips*, 655 S.W.2d 6, 9 (Ky. 1983) ("The collaboration in the statute means simply collaborating in the scheme, and it is not necessary for the Commonwealth to show that each participant collaborating in the scheme collaborated with or even was aware of the collaboration of the other participants.").

[6] Jenkins relies on a Kentucky Supreme Court case, *Brewer v. Commonwealth*, 206 S.W.3d 313, 320 (Ky. 2006), to support his contention that conspiracy is an element of criminal syndication. Appellant's Rep. Br. at 9.  In *Brewer*, the court held that a statement admitted at trial was an exception from the hearsay rule because it was made by a co-conspirator and the appellant was convicted of criminal syndication, "which requires a conspiracy of five or more persons." *Ibid*.  We are not persuaded that the *Brewer* court meant to identify the essential elements of the offense of criminal syndication.  In that case, a conspiracy was in fact proven beyond a reasonable doubt; at most, this suggests that conspiracy is one manner of collaborating for the purposes of criminal syndication, and was the manner of collaboration proven by the Commonwealth in that case. *Ibid*.

Second, Jenkins argues that Kentucky's codified Rule of Consistency, Ky. Rev. Code. Ann. § 506.070(3), applies to all crimes of which conspiracy is an essential element. This proposition is not obvious from a plain reading of the provision, which states that "[a] defendant cannot be convicted of *conspiracy* if all of his co-conspirators have been acquitted or discharged under circumstances amounting to an acquittal." Jenkins argues that the legislative history of § 506.070(3) "shows plainly" that it applies to "any crime if conspiracy is an essential element of that crime." Appellant's Rep. Br. at 7. Jenkins's account of the legislative history behind the statute may well be correct. Nonetheless, this is not the court before which that argument ought to be made, and Jenkins points us to no authoritative decision by a Kentucky court adopting the interpretation of the Rule of Consistency that he urges. *See Fiore v. White*, 528 U.S. 23, 28-29 (1999); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Jenkins's third assertion is no more settled under Kentucky law than the first two. Jenkins argues that his co-defendants' plea agreements dismissed the criminal-syndication charges under circumstances amounting to acquittal because none of the co-defendants pleaded guilty to a lesser included offense, none "suffered any penalty, none has a syndication or related charge on her record, and none risk facing those charges again." Appellant's Br. at 13. Insofar as Kentucky's highest court confronted this issue, its resolution is not favorable to Jenkins's claim. In *Commonwealth v. Sego*, the Kentucky Supreme Court held that § 506.070(3) does not warrant a directed verdict of not guilty on a conspiracy charge when a co-defendant pleads out of the conspiracy charge. 872 S.W.2d 441, 444 (Ky. 1994). That court held that "merely because a codefendant could not be further

prosecuted for conspiracy did not mean that there was not a conspiracy between . . . [defendant and co-defendant] warranting an instruction on conspiracy. . . . We do not believe the legislature intended the reference to 'acquittal' under KRS 506.070(3) to mean a negotiated plea where the co-conspirator testifies at trial to participation in the conspiracy. It is a more consistent interpretation to believe that section (3) was adopted merely to prevent inconsistent verdicts." *Ibid*.

Jenkins argues that the "immunity from prosecution" and a plea to a lesser-included charge in the plea agreement in *Sego* are distinguishable from the unconditional dismissal and an alleged immunity from re-prosecution granted to Jenkins's co-defendants. "[A] sweeping rule precluding application of KRS 506.070(3) in all plea-bargain situations would not take into account the various types of agreements that might be reached," Jenkins argues. Appellant's Br. at 15. Be that as it may, no federal constitutional law would be violated by a state's adoption of such an interpretation of the Rule of Consistency – in view of the fact that a state is not constitutionally required to adopt such a rule at all. *See Harris v. Rivera*, 454 U.S. 339, 346 (1981) (holding that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside" in a federal habeas corpus proceeding). Whether and how Kentucky applies a rule that affords criminal defendants protections beyond what is constitutionally required is the province of state law.

Even if Jenkins's interpretation of Kentucky law were the most compelling of the possible alternatives, the state court's failure to come to the same conclusion is at most an erroneous synthesis of state law. A failure to apply, or even identify, a state rule of consistency does not contradict the governing law of *Jackson* and *Winship*. *See Smith v. Sowders*, 848 F.2d 735, 738-39 (6th Cir. 1988)

(holding that "a claim of a federal constitutional violation that is based on an alleged misapplication of a state-adopted single larceny rule cannot be sustained," because "[t]he adoption of a single larceny doctrine is strictly a matter of state law," and "the application of that doctrine, or the refusal to apply it to a given set of facts is a matter to be resolved by state courts" (internal quotation marks and citation omitted)).

We conclude that, as did the petitioner in *Curtis*, Jenkins is "impermissibly attempting to use a petition for a writ of habeas corpus to press his preferred interpretation of [state] law," 552 F.3d at 582, notwithstanding the attempt to recast it as a challenge to a state court's application of *Winship* and *Jackson*.

### III

For the reasons stated above, we AFFIRM the district court's denial of the writ of habeas corpus.