THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EFRAIN ZAMUDIO, Defendant-Appellant.

First District (3rd Division)   No. 1—95—1246

Opinion filed December 24, 1997.

Marvin Bloom and Marc W. Martin, both of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Robert Robertson, and Tyra Taylor-Bell, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAHILL delivered the opinion of the court:

After a bench trial, defendant Efrain Zamudio was convicted of stalking in violation of section 12—7.3(a) of the Criminal Code of 1961. 720 ILCS 5/12—7.3(a) (West 1996). Defendant was sentenced to two years of probation and one year of home confinement on Saturday nights. He was ordered to refrain from contact with Carlos Rios and Rios' family.

Defendant makes the following arguments on appeal: (1) section 12—7.3(a) of the Criminal Code applies to innocent conduct in violation of due process; (2) the section is unconstitutionally overbroad; (3) the section is unconstitutionally vague because the term "follows" is not defined; and (4) the evidence was insufficient to sustain defendant's conviction. We affirm.

Carlos Rios testified at trial that he and defendant were friends for about four years before Rios decided to end the friendship. At about 2 p.m. on January 22, 1994, Rios was driving on State Road to Chicago Ridge Mall, where he worked as a salesperson in a clothing store. As he drove, a red Camaro approached from the opposite direction. He recognized the car as one that he had seen defendant driving before. The Camaro quickly made a U-turn and followed Rios about four blocks to a traffic light at the intersection of Ridgeland and 87th Streets. While Rios waited at the red light, defendant pulled alongside Rios' car, lowered his window, and began shouting. Rios could not hear what defendant was saying through his closed window.

Rios testified that on January 28, 1994, at 11:45 p.m., he saw defendant's car behind his car as he left a friend's house at 64th and Lawndale Streets. Rios turned left onto 63rd Street and defendant followed. When Rios increased his speed to 45 miles per hour, so did defendant. Defendant maintained a distance of two to three feet

behind Rios' car. Rios stopped at a red light. Defendant pulled beside him, lowered his window and shouted at Rios. Rios could not hear what defendant said.

Rios also testified that on February 14, 1994, he took Norma Renteria to a movie. As they drove to Renteria's house after the movie, at around 9:30 p.m., Rios noticed a Cutlass Supreme with fog lights following him. Rios was unfamiliar with the car, but suspected defendant was the driver because of the way the car followed him. The car remained directly behind Rios' car and followed him to Renteria's house.

Renteria lived near the end of a dead-end street. Rios testified that he parked his car in front of Renteria's house. Defendant then parked his car so that it completely blocked Rios' car. Defendant got out of his car, walked to Rios' car, banged on the window, and said he was going to kill Rios. Rios and Renteria stayed in the car.

Rios attempted to free his car because "[h]e was afraid and had nowhere to go." He drove forward and "tapped" defendant's car before backing into Renteria's driveway. Defendant ran to his car, retrieved a portable phone, and then "sped off." When Rios arrived home, he called the police and later went to the police station.

Renteria's testimony corroborated Rios' account of the February 14, 1994, incident.

Francis Martin Rios, Carlos Rios' mother, testified that she went to the police station on February 14, 1994. She talked to defendant in an interview room with two police officers present. Defendant pleaded with her not to press charges. Defendant said he was going to stop following Rios. Francis Rios did not believe defendant because defendant was already in violation of a court order directing defendant to stay away from Rios.

Defendant testified on his own behalf. He said that on January 22, 1994, he visited a cousin at the Chicago Ridge Mall. As he was driving home, he saw Rios' car heading toward the mall on State Road. He denied following Rios. He also denied rolling down his window and shouting at Rios.

Defendant denied seeing, following or shouting at Rios on January 28, 1994. He admitted that he saw Rios and Renteria on February 14, 1994. He claimed that he was on his way to visit a friend who lived near Renteria. He drove down the street on which Renteria lived and made a U-turn. Defendant then noticed Rios' car approaching in his rearview mirror. Rios drove his car into defendant's car. Defendant claimed that he got out of his car and tried to get Rios' insurance information, but Rios and Renteria laughed at him and ignored his request. Defendant denied threatening to kill Rios, but

admitted that he hit Rios' car window and told Rios that he was going to "kick his ass." Defendant claimed that Rios' car came toward him and tapped his legs as he returned to his car. Defendant unsuccessfully tried to call the police, so he drove to the police station. Defendant was at the station filling out an accident report when he was arrested for stalking Rios.

◼ Defendant challenges the constitutionality of the stalking statute on several grounds. Defendant argues that the statute "punish[es] wholly innocent conduct." He further argues that the statute is overbroad because it can be applied to constitutionally protected conduct. The statute that defendant was prosecuted under reads:

> "(a) A person commits stalking when he or she, knowingly and without lawful justification, on at least 2 separate occasions follows another person or places the person under surveillance or any combination thereof and:
>
>> (1) at any time transmits a threat to that person of immediate or future bodily harm, sexual assault, confinement or restraint; or
>>
>> (2) places that person in reasonable apprehension of immediate or future bodily harm, sexual assault, confinement or restraint." 720 ILCS 5/12—7.3(a) (West 1996).

Assault is as old as the English common criminal law (6 Am. Jur. 2d *Assault & Battery* § 1 (1963)), is a part of the Model Penal Code (Model Penal Code § 211.1, 10 U.L.A. 538 (1974)), and has been a part of the Illinois Criminal Code from the beginning (720 ILCS 5/12—1 (West 1996)). Stripped of the name "stalking," the conduct described and proscribed in the statute is nothing more than one example of an assault at common law or the offense of assault in our criminal code.

◼ In *People v. Rand*, 291 Ill. App. 3d 431 (1997), and in *People v. Cortez*, 286 Ill. App. 3d 478 (1996), we held that the "knowingly" and "without lawful justification" requirements limit the reach of the statute to only culpable conduct. *Rand*, 291 Ill. App. 3d at 438; *Cortez*, 286 Ill. App. 3d at 481. Following those cases, we reject defendant's argument that the statute can be applied to innocent or constitutionally protected conduct. The conduct must be accompanied by evidence of a threat of harm or of placing the victim in reasonable apprehension of harm. The State must plead and prove each essential element of the offense. *People v. Soto*, 277 Ill. App. 3d 433, 438 N.E.2d 990 (1995). Defendant's argument suggests that the statute would permit a conviction based on evidence of following without more. The statute cannot be so read. The statute does not require that the threat "precede" the "following," but, rather, the requirement that the State prove that the following is unlawful makes clear that the State

must prove that the following and threat are part of a course of conduct that the legislature has dubbed the assault of "stalking."

We next address defendant's argument that the stalking statute is unconstitutionally vague because it fails to define the word "follows." Since defendant's vagueness challenge does not implicate first amendment concerns, we need only address whether the statute is vague as applied in this case. *People v. Jihan*, 127 Ill. 2d 379, 385, 537 N.E.2d 751 (1989).

■ A statute is unconstitutionally vague under the due process clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2) if it fails to give "a person of ordinary intelligence a reasonable opportunity to know what conduct is lawful and what conduct is unlawful." *People v. Anderson*, 148 Ill. 2d 15, 27-28, 591 N.E.2d 461 (1992). A statute is also unconstitutionally vague if it allows for arbitrary and discriminatory application by police, judges, and juries. *Jihan*, 127 Ill. 2d at 385.

■ Defendant contends that he could not have known his conduct on January 22 or 28 violated the statute because he was merely "[driving] behind Rios' car in a public place" and doing nothing "in furtherance of [a] threat." He argues that the term "following" is too vague to warn him that his conduct was prohibited.

In the absence of a statutory definition, words in a statute are to be given their ordinary and popularly understood meanings. *People v. Anderson*, 148 Ill. 2d at 28. In *Cortez*, we held that "[t]he 1993 stalking statute's use of the terms 'follows' and 'surveillance' is sufficiently definite to put the average person on notice as to what constitutes a violation." *Cortez*, 286 Ill. App. 3d at 483. We relied on our supreme court's interpretation of an earlier version of the stalking statute. See *People v. Bailey*, 167 Ill. 2d 210, 657 N.E.2d 953 (1995).

The statute at issue in *Bailey* read:

> "(a) A person commits stalking when he or she transmits to another person a threat with the intent to place that person in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint, and in furtherance of the threat knowingly does any one or more of the following acts on at least 2 separate occasions:
>
> > (1) follows the person, other than within the residence of the defendant;
> >
> > (2) places the person under surveillance by remaining present outside his or her school, place of employment, vehicle, other place occupied by the person, or residence other than the residence of the defendant." 720 ILCS 5/12—7.3(a) (West 1992).

Defendant argues that *Bailey* is inapplicable because the term "follows" is no longer required to be "in furtherance of a threat." Defendant argues that the "in furtherance of a threat" requirement saved the 1992 stalking statute from being deemed unconstitutionally vague in *Bailey*.

In *Bailey*, our supreme court noted that "[b]ecause the following must be in furtherance of a threat, the term 'following' must have an element of pursuit to it." *Bailey*, 167 Ill. 2d at 229. But the court also noted that "Webster's defines 'follow' to mean 'to go, proceed, or come after' and 'to go after in pursuit or in an effort to overtake.'" *Bailey*, 167 Ill. 2d at 229, quoting Webster's Third New International Dictionary 883 (1986). Even without the "in furtherance of a threat" language, the "following" must be "without lawful justification." It does not include "aimless, unintentional, or accidental conduct." *Bailey*, 167 Ill. 2d at 229.

Defendant misapprehends the nature of the assault described in the stalking statute. Following someone may be innocent enough, as one follows taillights on a dark road. But the crime described in this statute requires the State to plead and prove beyond a reasonable doubt that the following was a part of conduct that placed the victim in reasonable apprehension of receiving a battery and so was without lawful justification. This is true under either the threat language of subsection 12—7.3(a)(1) or the classical definition of assault in subsection 12—7.3(a)(2). In either case, at the end of the State's case in chief, it must have met its burden of proof for assault.

Defendant's car followed closely behind Rios three times. Defendant twice pulled his car next to Rios at a red light and shouted at him. The third time, defendant stayed behind Rios all the way to Renteria's house, where he parked his car and approached Rios. A person of ordinary intelligence would be on notice that this behavior is "following."

■ We also find no merit to defendant's argument that the statute "allows arbitrary and discriminatory enforcement of the statute based upon the subjective standards of the decision maker." A defendant can be legally arrested, prosecuted and convicted only "where a defendant knowingly and without lawful justification either follows or places a person under surveillance on two separate occasions, and either threatens or assaults that person." *Cortez*, 286 Ill. App. 3d at 483. The requirement of two separate incidents accompanied by threat or assault is clear enough to inhibit arbitrary and discriminatory enforcement based on subjective standards.

■ We finally address defendant's argument that his conviction was based on insufficient evidence. The standard of review when a

defendant argues his conviction is based on insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Sutherland*, 155 Ill. 2d 1, 17, 610 N.E.2d 1 (1992). We will not reverse a conviction unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of defendant's guilt. *People v. Jimerson*, 127 Ill. 2d 12, 43, 535 N.E.2d 889 (1989).

■ Defendant argues that the State did not prove that defendant "knowingly" followed Rios on January 22 and 28, 1994. A defendant acts "knowingly" when he is aware of the existence of facts that make his conduct unlawful. *People v. Tolliver*, 147 Ill. 2d 397, 400, 589 N.E.2d 527 (1992); *People v. Gean*, 143 Ill. 2d 281, 288, 573 N.E.2d 818 (1991). Defendant argues that he could not have known that his "following" conduct was unlawful because his conduct did not amount to a violation of the statute until he threatened Rios on a later date.

The statute does not require the State to prove that defendant knew his actions were illegal. The State must show only that defendant knew he was following or surveilling Rios. Defendant closely followed Rios three times and tried to communicate with Rios each time. From this conduct a trier of fact could reasonably infer that defendant knowingly followed Rios.

■ Defendant also argues that the State did not prove that defendant acted "without lawful justification." He argues that because he possesses a "clear constitutional right to travel freely" he had "lawful justification" to travel as he did on January 22 and 28, 1994. See *Shapiro v. Thompson*, 394 U.S. 618, 631, 22 L. Ed. 2d 600, 613, 89 S. Ct. 1322, 1329 (1969); *United States v. Guest*, 383 U.S. 745, 757-58, 16 L. Ed. 2d 239, 249, 86 S. Ct. 1170, 1177-78 (1966). The issue is not whether defendant had lawful justification to be in or travel to the places where the incidents happened. The issue is whether the facts of the case are such that a trier of fact could conclude that the following was without lawful justification because it placed Rios in apprehension of bodily harm.

■ Finally, defendant argues that the State did not prove defendant transmitted a threat to Rios. Defendant notes that in defining the term "threat" under the Illinois intimidation statute (720 ILCS 5/12—6(a) (West 1996)) we have found that the term implies that the threatening expression "have a reasonable tendency to create apprehension that its originator will act according to its tenor." See *People v. Maldonado*, 247 Ill. App. 3d 149, 153-54, 617 N.E.2d 236 (1993); *People v. Libbra*, 268 Ill. App. 3d 194, 198, 643 N.E.2d 845 (1994). We believe a trier of fact could properly conclude that

defendant's behavior had a "reasonable tendency to create apprehension" where defendant's threat to kill Rios was made while banging on the car window after repeatedly following Rios and after having parked so Rios could not leave.

Affirmed.

LEAVITT, P.J., and GORDON, J., concur.