In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-3737

JAMES CURTIS,

*Petitioner-Appellant,*

*v.*

JESSE MONTGOMERY,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 489—**Matthew F. Kennelly**, *Judge.*

ARGUED DECEMBER 17, 2008—DECIDED JANUARY 8, 2009

Before BAUER, POSNER, and MANION, *Circuit Judges*.

BAUER, *Circuit Judge*. An Illinois jury found James Curtis guilty of aggravated stalking, telephone harassment, and violating an order of protection. After exhausting his state remedies, Curtis filed a pro se petition for a writ of habeas corpus, 28 U.S.C. § 2254, in the federal district court arguing, among other things, that the prosecution failed to prove all of the elements of aggravated stalking

beyond a reasonable doubt. The district court denied his petition, but we granted a certificate of appealability.

Curtis dated Deborah Chester for more than three years; during that time the couple had a daughter together. On February 28, 2002, Curtis was served with an order of protection, which, among other things, prohibited him from contacting Chester or going into her house. In the middle of the night after Curtis was served, he called Chester to inform her that he had been released from jail and that the next time he went back "it would be for something more serious." Chester called the police. The next day—March 1—Curtis went to Chester's house while she was out. Curtis repeatedly demanded to know where Chester was, but Jeneen Edwards, Chester's babysitter, refused to either tell him or open the door. Instead, she called the police. By the time the police arrived, Curtis had left, but they found him five blocks away and arrested him.

About two months later, on April 28, 2002, Edwards awoke at Chester's home to find that the furniture had been slashed. Chester and Edwards later discovered that some jewelry, leather jackets, and a set of keys had been stolen, and that some of Chester's court paperwork was missing. Two days after that, Curtis called Chester and threatened to kill her if she did not allow him to see his daughter. She reported the threat to the police. Later that day, Curtis called back, assuring Chester that if she allowed him to see his daughter, he would return the leather jackets, which he admitted stealing.

Chester again called the police, who told her to arrange a meeting with Curtis. Chester complied with the officers'

instructions, and, when Curtis called back, agreed to meet him. A few minutes after Chester arrived at the meeting place, Curtis got out of a van and started walking towards Chester's car. He waved to her and motioned for her to come towards him. Instead, she drove away, and several detectives, who were staked out nearby, arrested him.

A jury found Curtis guilty of aggravated stalking, telephone harassment, and violating an order of protection, but acquitted him of residential burglary and criminal damage to property. The trial court sentenced him to a total of 10 years' imprisonment. The Illinois appellate court vacated the conviction for violating the protective order, finding that it was a lesser included offense of aggravated stalking, but otherwise affirmed the judgment. Curtis unsuccessfully sought rehearing by the appellate court. Curtis's petitions for leave to appeal to the Illinois Supreme Court and for a writ of certiorari to the U.S. Supreme Court were denied.

While Curtis's direct appeal was pending, he filed a petition for post-conviction relief, which the Illinois circuit court dismissed as frivolous. The Illinois appellate court affirmed, and the Illinois Supreme Court denied leave to appeal.

In January 2007 Curtis petitioned the federal district court for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied the petition, but we issued a certificate of appealability on the question "whether there was sufficient evidence to sustain his conviction for aggravated stalking where one of the two requisite acts of

surveillance consisted of arriving at a location where the victim had agreed to meet him."[1]

A petitioner is entitled to a writ of habeas corpus if, as relevant here, a state court unreasonably applies clearly established federal law, meaning that it identifies the appropriate standard, but unreasonably applies it to the facts. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Curtis argues that the Illinois appellate court unreasonably applied *Jackson v. Virginia*, 443 U.S. 307 (1979), when it upheld his conviction for aggravated stalking. *Jackson* requires that the prosecution put forward enough evidence of each element of the offense that a rational fact finder could find the defendant guilty beyond a reasonable doubt. *Jackson*, 443 U.S. at 324; *Johnson v. Bett*, 349 F.3d 1030, 1034 (7th Cir. 2003); *McFowler v. Jaimet,* 349 F.3d 436, 446 (7th Cir. 2003). Curtis maintains that, viewing the evidence in the light most favorable to the State—as we must, *Jackson*, 443 U.S. at 319; *Johnson*, 349 F.3d at 1034—no rational trier of fact could have found that the State proved all of the elements of aggravated stalking beyond a reasonable doubt.

---

[1] The State represents in its brief that Curtis has been released from prison and has completed his mandatory supervised-release term, but, as the State points out, this change in status does not moot Curtis's petition. *See Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998) (noting presumption that petitioners who have been released from custody suffer adverse consequences from the fact of their convictions); *Torzala v. United States,* 545 F.3d 517, 521 (7th Cir. 2008); *Leyva v. Williams*, 504 F.3d 357, 363 (3d Cir. 2007).

As relevant here, a person commits aggravated stalking if, in violation of an order of protection, he knowingly and without lawful justification places another person under surveillance on at least two occasions and threatens the victim with bodily harm. 720 ILCS 5/12-7.3(a)(1), 7.4(a)(3). A person places another "under surveillance" by "remaining present outside" the victim's home, work, school, or vehicle. *Id.* at 5/12-7.3(d). Curtis concedes that the March 1 incident, when he went to Chester's home and demanded to know her whereabouts, constitutes one act of surveillance. He contends, however, that the State did not prove a second act of surveillance. Specifically, he says that arriving at a location where Chester had agreed to meet him was not an act of surveillance.

First, Curtis argues that the State did not prove beyond a reasonable doubt that he "remained present" outside of Chester's car. He maintains that the State's evidence established that he was arrested as he was approaching Chester's car, and thus, that he could not possibly have "remained" outside of it. The State contends, however, that this argument is not cognizable because, it says, Curtis is really taking issue with the state court's interpretation of state law, specifically what it means to "remain present" outside of a vehicle for purposes of 5/12-7.3(d).

On direct appeal to the Illinois appellate court, Curtis pressed a similar argument. The appellate court analyzed the purposes behind the stalking statute and prior cases interpreting the phrase "remain present." *People v. Curtis*, 820 N.E.2d 1116, 1123-24 (Ill. App. Ct. 2005). It concluded that the statute did not require the State to prove that

Curtis remained present outside of Chester's car for a set amount of time or that he stopped, stayed, or waited outside of the car. *Id*. at 1124. Furthermore, the court explained, the question "whether a particular set of circumstances constitutes 'surveillance' as defined in the statute is a question of fact for the jury." *Id*. It noted that Curtis's actions did not fit the usual pattern where a stalker lay in wait for his victim, but it interpreted the statute as prohibiting a broader range of conduct, observing that it did not require the police to wait for the stalker to reach the victim to act. *Id*.

We agree with the State that Curtis is impermissibly attempting to use a petition for a writ of habeas corpus to press his preferred interpretation of Illinois law. We may not review state-court interpretations of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *Lambert v. Davis*, 449 F.3d 774, 778-79 (7th Cir. 2006). And petitioners cannot avoid this limitation by recasting their arguments as challenges to a state court's application of *Jackson*. *See Bates v. McCaughtry*, 934 F.2d 99, 102 (7th Cir. 1991). Curtis insists that he is not challenging the Illinois appellate court's interpretation of what constitutes surveillance, but his arguments belie that assertion. He says that the April 30 "incident" was "exceedingly brief," he "merely arrived where Ms. Chester agreed to meet him," and there was no evidence that he had time to "say a single word" to Chester or that he was lying in wait for Chester to arrive. Curtis then contrasts the facts of his case to facts of other stalking cases where the defendants watched their victims for longer periods of time.

These arguments, however, ignore the Illinois appellate court's decision that the stalking statute does not require the state to prove that the defendant was present near his victim for a minimum amount of time. Instead, the court said, it was up to the jury to decide whether the totality of a defendant's actions—including in this case the "brief period" Curtis was near Chester's car—constituted surveillance. *Curtis*, 820 N.E.2d at 1124. Curtis does not say how, given this "time-less" definition of "remain present," the evidence was insufficient to prove beyond a reasonable doubt that his actions constituted surveillance. Indeed, the evidence, viewed in the light most favorable to the verdict, establishes that Curtis was arrested while walking toward Chester's car after luring her to a meeting place by threatening to kill her if she refused and promising to return her belongings if she agreed. Under the interpretation of "remain present" adopted by the Illinois appellate court, the evidence was sufficient to convince a reasonable trier of fact beyond a reasonable doubt that Curtis put Chester under surveillance.

Curtis next argues that the State did not prove beyond a reasonable doubt that his conduct was "knowing" and "without lawful justification," insisting that there was no evidence that Curtis knew that he was surveilling Chester and that the evidence showed that Curtis wanted to meet with Chester only for the legitimate purpose of seeing his daughter. The State contends that Curtis procedurally defaulted federal review of these arguments, noting that he first raised them on a motion to reconsider after the appellate court decided his direct appeal, and arguing that this was too late.

A petitioner is required to present his federal claims to the state courts in accordance with the state's procedural requirements so that the state courts have a meaningful opportunity to correct any mistakes. *See Martin v. Evans*, 384 F.3d 848, 854 (7th Cir. 2004); *Chambers v. McCaughtry*, 264 F.3d 732, 737-38 (7th Cir. 2001). If the petitioner misses the opportunity to properly present a claim to the state courts, then federal review of the claim is forfeited. *See Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007). Curtis insists that his arguments on direct appeal were adequate to preserve his current challenge to the sufficiency of the evidence of his intent. To fairly present claims, however, a petitioner must provide the state and federal courts with the same factual and legal bases. *See Anderson v. Benick*, 471 F.3d 811, 815 (7th Cir. 2006). Although Curtis did argue in his direct appeal that the state did not prove beyond a reasonable doubt that he engaged in two acts surveillance, he made no mention of the intent element. *Compare Stevens v. McBride*, 489 F.3d 883, 893-94 (7th Cir. 2007). That Curtis might have argued intent in his motion for reconsideration is irrelevant because the court declined to rehear the appeal.

Curtis further argues that his petition for post-conviction relief, if read liberally, might have raised this ground for relief. The state courts did not construe Curtis's petition as attacking the evidence of intent, and it would require an overly liberal reading to tease this argument out of his submissions. In his 47-page brief to the appellate court, he quotes the stalking statute's intent element—"knowing and without legal justification"—and on several occasions puts quotation marks around the word "knowing," but

it is always in the context of attacking the evidence of surveillance. He never actually argues in any specific way that the State failed to produce evidence that he knew he was stalking Chester and that he was doing it without legal justification. He makes even fewer references to the intent element in his petition for leave to appeal to the Illinois Supreme Court.

In any event, there was enough evidence from which a rational juror could find beyond a reasonable doubt that Curtis engaged in surveillance of Chester "knowingly." A defendant acts "knowingly" as long as he "is aware of the existence of facts that make his conduct unlawful"; he need not know that his actions are illegal. *People v. Zamudio*, 689 N.E.2d 254, 258 (Ill. App. Ct. 1997). Curtis argues that there was insufficient evidence that he acted knowingly because the state did not prove that Chester objected to the meeting or that she reminded Curtis of the protective order. But neither fact is required to prove knowledge. A rational trier of fact could have concluded based on the trial testimony that Curtis knew he was luring Chester to a meeting by threatening her and by offering to return her property, and he certainly knew that the protective order prohibited *all* contact with Chester. Thus, the State produced sufficient evidence that Curtis acted knowingly.

Finally, the prosecution presented sufficient evidence that Curtis did not have a lawful justification for his actions. *See Zamudio*, 689 N.E.2d at 259. Curtis insists that the evidence showed only that he and Chester agreed to meet so that he could see his daughter, which he was

legally allowed to do. But even though Curtis was permitted to visit his daughter, the protective order prohibited him from contacting Chester in any way. Furthermore, there was evidence, which the jury was entitled to believe, that Chester only agreed to the meeting because of Curtis's threat, hardly a "lawful justification" for meeting her.

Therefore, we AFFIRM the judgment of the district court.