NONPRECEDENTIAL DISPOSITION

To be cited only in accordance
with Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois  60604

Argued June 1, 2011
Decided August 2, 2012

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

WILLIAM M. CONLEY, *District Judge*[*]

No. 10-3499

| | |
|---|---|
| ROBERT SCHWEINER, | Appeal from the |
| *Petitioner-Appellant*, | United States District Court for the |
| | Eastern District of Wisconsin. |
| *v.* | |
| | No. 08-C-1109 |
| BRIAN FOSTER, Warden, Kettle | |
| Moraine Correctional Institution, | William E. Callahan, Jr., |
| *Respondent-Appellee*. | *Magistrate Judge*. |

## O R D E R

The Wisconsin crime of repeated sexual assault of a child requires proof of at least three separate sexual assaults of the same victim within a specified time.  WIS. STAT. § 948.025(1).  At Robert Schweiner's trial for this crime, Danielle D. testified that he sexually

---

[*] The Honorable William M. Conley, Chief Judge of the United States District Court for the Western District of Wisconsin, sitting by designation.

assaulted her on three days during the summer of 2002, when she was 13 years old. Regarding the first episode, she described his repeated acts of sexual contact with two of her intimate body parts, and a supplemental jury instruction allowed the jury to consider these as separate assaults. The jury convicted, and Schweiner's direct appeal was unsuccessful.

In state postconviction proceedings, Schweiner claimed that the supplemental instruction omitted a key concept in Wisconsin law that near-simultaneous sexual contacts with separate body parts do not count as separate sexual assaults. This omission, he argued, allowed the jury to convict him without proof of every element of the crime, in violation of his right to due process.[2] The Wisconsin trial and appellate courts rejected this argument, finding that the instruction adequately stated the law based on the evidence presented at trial. Having exhausted his state remedies, Schweiner petitioned the federal court for a writ of habeas corpus. A magistrate judge denied relief, and Schweiner appealed.

We affirm. Schweiner's argument casts a claimed violation of state law—not cognizable on federal habeas review—as a federal due-process violation. Under the Due Process Clause, the prosecution must prove every element of a crime beyond a reasonable doubt, but the elements of the crime are defined by state law. Here, the state appellate court held that the supplemental jury instruction was a correct statement of Wisconsin law based on the facts of Schweiner's case. That conclusion ends our inquiry.

## I. Background

In 2002 Schweiner was in a relationship (its precise nature is unclear) with a woman named Kim. Kim's daughter Danielle, then 13 years old, alleged that Schweiner sexually assaulted her several times that summer. Schweiner was arrested and charged with repeated sexual assault of the same child. *See* WIS. STAT. § 948.025(1) (1999-2000). To convict, the prosecution was required to prove that Schweiner had sexual contact with Danielle at least three times within a given period of time. *See id.* If there was evidence of more than three contacts, the jurors had to agree that at least three sexual contacts occurred, but they were not required to agree on which particular contacts were proven. *See id.* § 948.025(2).

---

[2] Schweiner also claimed that his trial attorney's failure to object to the instruction constituted ineffective assistance of counsel. Because we granted a certificate of appealability solely on the due-process issue, we will refer only to that claim.

At Schweiner's trial the prosecutor informed the jury in his opening statement that he would present evidence of three instances of sexual assault. Danielle then testified that Schweiner sexually assaulted her on three different days during the summer of 2002. On the first day, Schweiner took her swimming at a public quarry lake. While they were in the water, he sexually assaulted her under the pretense of playfully tossing her into the air. Danielle testified that when Schweiner threw her up out of the water, he started "feeling up on my bootie," meaning her buttocks. She said his hands would then "kind of go like towards the front . . . like towards my . . . vagina." She said this happened repeatedly while they were swimming.

The second episode took place during another visit to the lake. Again while they were swimming, Schweiner removed Danielle's swimsuit bottom, grabbed her ankle and pulled her toward him, and inserted his fingers into her vagina. The third episode occurred in Schweiner's apartment, where he made Danielle masturbate him.

Schweiner took the stand in his own defense. He testified that Danielle concocted her story out of personal spite toward him. He denied the substance of the second and third episodes Danielle described. As to the first episode, he acknowledged tossing Danielle out of the water but claimed it was innocent horseplay.

Based on Danielle's testimony, the prosecutor shifted course during his closing argument and informed the jury that there were four separate sexual assaults because Schweiner touched two of Danielle's intimate body parts during the first outing to the lake. The prosecutor explained that "under the law, touching her vagina and touching her buttocks when he's tossing her in the air are—both of those can be distinct offenses. So you can look at both of those things, but you're going to have to look at them separately." The judge instructed the jury on the offense of repeated sexual assault of the same child and also on the lesser-included offense of second-degree sexual assault. A verdict of guilty on the latter crime was appropriate if the jury found that fewer than three sexual contacts occurred.

During deliberations, the jury sent two questions to the judge. The first asked whether "the touching of the buttocks or vagina constitute one or two separate charges towards three sexual assaults." The second asked, "If we all agree to three of the four charges of the second degree form, does this constitute three sexual assaults and become repeated acts of sexual assault of a child[?]" The judge responded with the following supplemental instruction, to which neither party objected:

> If the State proved beyond a reasonable doubt that the defendant touched the buttocks of Danielle . . . , that is one contact. If the State proved beyond a reasonable doubt that the defendant touched the vagina of Danielle on the first occasion . . . ,

that is a second contact. If the State proved beyond a reasonable doubt that the defendant touched the vagina of Danielle on the second occasion . . . , that is a third contact. If the State proved beyond a reasonable doubt that the defendant intentionally caused or allowed Danielle to do the touching of . . . the penis of the defendant . . . , that is a fourth contact.

It is for you to decide if there were no contacts, as I have defined that, or one contact or two contacts or three contacts or four contacts. If you find three or more contacts, as I have defined them . . . , that makes up the offense of repeated acts of sexual assault of a child.

Minutes later, the jury returned its verdict, finding Schweiner guilty of the charged crime of repeated sexual assault of the same child. The judge sentenced him to 20 years in prison and 20 years of extended supervision. The court of appeals affirmed, and the state supreme court denied review.

Schweiner then sought state postconviction relief, asserting that the trial court's supplemental instruction permitted the jury to convict him without finding every element of the offense. He pointed out that under Wisconsin law, simultaneous or near-simultaneous acts of sexual contact with separate intimate body parts are not considered separate sexual assaults. He argued that the supplemental instruction required the jury to consider the near-simultaneous sexual contacts during the first episode at the lake as separate sexual assaults. Because jurors did not have to indicate which sexual contacts the prosecution had proven, it was possible that one or more of them found that he had sexually assaulted Danielle three times but that two of the assaults were the near-simultaneous sexual contacts during the first episode at the lake. Therefore, Schweiner argued, the jury might have convicted him of repeated sexual assault even though the jurors agreed only on two sexual assaults. The trial court denied the postconviction motion, and Schweiner appealed.

The Wisconsin Court of Appeals acknowledged that simultaneous sexual contacts could not be considered separate assaults but rejected Schweiner's assertion that the first episode at the lake *necessarily* involved allegations of simultaneous contacts:

[The] evidence indicates that even if both contacts occurred within the context of a single toss, Schweiner engaged in two separate volitional acts, including a conscious decision to squeeze and rub Danielle's buttocks with his hand, and a conscious decision to move his hand forward to touch her vagina before tossing her.

The court concluded that "[t]he trial court's supplemental instruction therefore did not misstate the law when it instructed the jury that it could find four separate contacts." The

appellate court affirmed the trial court's denial of postconviction relief, and the Wisconsin Supreme Court denied review.

Schweiner then petitioned the federal district court for a writ of habeas corpus. A magistrate judge presiding by consent, *see* 28 U.S.C. § 636(c)(1), denied the petition. The judge began by questioning whether the petition raised a question of federal law and ultimately assumed without deciding that it did. The judge then concluded that habeas relief was unwarranted because the trial court's supplemental instruction "ma[de] clear that the jury could, but was *not* required to, view the single-toss/hand-to-buttock touching and the hand-to-vagina touching as separate sexual assaults."

We granted a certificate of appealability on the issue of whether the instruction violated Schweiner's federal constitutional right to due process.

## II. Discussion

A person in custody pursuant to a state-court conviction may petition for a writ of federal habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (" '[F]ederal habeas corpus relief does not lie for errors of state law.' " (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))); *Corcoran v. Wilson*, 651 F.3d 611, 613 (7th Cir. 2011). As a result, state-law violations "are cognizable only if they resulted in fundamental unfairness and consequently violate a petitioner's constitutional rights." *McGuire*, 502 U.S. at 72; *Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003). Schweiner conceptualizes his claim as a violation of federal due process. But such a claim merits federal habeas relief "only if the state court committed an error so serious as to render it likely that an innocent person was convicted." *Perruquet v. Briley*, 390 F.3d 505, 510 (7th Cir. 2004).

Of course, Schweiner is correct that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Accordingly, jury instructions that relieve the State of its burden of proof violate due process. *Carella v. California*, 491 U.S. 263, 265 (1989) (per curiam). Schweiner argues that the trial court's supplemental instruction allowed the jury to convict him without finding three distinct sexual contacts, as required for the crime of repeated sexual assault of the same child. *See* WIS. STAT. § 948.025(1) (1999-2000).

Under Wisconsin law two near-simultaneous sexual contacts generally cannot

constitute separate sexual assaults. *See State v. Hirsch*, 410 N.W.2d 638, 641 (Wis. Ct. App. 1987). In *Hirsch* the prosecutor charged the defendant with three counts of sexual assault for touching the victim's vagina, buttocks, and vagina a second time with "little, if any, lapse of time between the alleged acts." *Id.* The Wisconsin Court of Appeals held that convicting the defendant of three separate counts of sexual assault based on the near-simultaneous contacts violated double jeopardy. *Id.* The court drew on *State v. Eisch*, 291 N.W.2d 800, 805 (Wis. 1980), in which the Wisconsin Supreme Court held that it is fundamentally unfair for a defendant "to be charged, tried, or convicted for offenses that are substantially alike when they are a part of the same general transaction or episode." *See Hirsch*, 410 N.W.2d at 641.

This case is different. Here, the state appellate court held that "[t]he trial court's supplemental instruction . . . did not misstate the law when it instructed the jury that it could find four separate contacts." The court noted Danielle's testimony that Schweiner committed two distinct sexual acts in the process of tossing her out of the water, "including a conscious decision to squeeze and rub Danielle's buttocks with his hand, and a conscious decision to move his hand forward to touch her vagina." The court rejected Schweiner's comparison to *Hirsch* because Schweiner "had time to reflect on his conduct and commit himself to having sexual contact with a second intimate body part of Danielle's."

Schweiner zeros in on the appellate court's explanation that Danielle's testimony and the trial court's supplemental instruction permitted the jury to find that the contacts with separate body parts were independent and therefore distinct sexual assaults. Because the instruction did not tell the jurors that simultaneous or near-simultaneous contacts could not be separate sexual assaults, Schweiner argues that the trial court effectively removed an issue of fact from the jury. We disagree. The appellate court held that the evidence and the instruction *permitted* the jury to find that the touching of separate body parts during the first outing at the lake constituted separate assaults, *not* that such a finding was *required*. That is, the court held that the instruction was an accurate statement of the law in the context of the facts of the case and did not allow the jury to convict Schweiner of repeated sexual assault based on simultaneous sexual contacts.

The flaw in Schweiner's argument is its premise that Danielle's testimony about his conduct during the first visit to the lake *necessarily* described a single act of sexual assault. The trial judge emphasized in the supplemental instruction that it was the jury's role to decide "if there were no contacts, as I have defined that, or one contact or two contacts or three contacts or four contacts." The instruction, the state appellate court held, was a correct statement of Wisconsin law in the context of the facts of the case. We are bound by this interpretation of state law. *See McCloud v. Lechner*, 409 F.3d 869, 874-75 (7th Cir. 2005); *Lechner*, 341 F.3d at 642 (citing *Wainwright v. Goode*, 464 U.S. 78, 84 (1983)).

Schweiner's argument resembles one we rejected in *Curtis v. Montgomery*, 552 F.3d 578 (7th Cir. 2009), a habeas case challenging a conviction for the Illinois crime of aggravated stalking, which requires the prosecutor to prove that the defendant placed the victim under surveillance on at least two occasions. *Id.* at 581. The defendant argued that the prosecution failed to prove a second act of "surveillance" as that term is defined in the Illinois stalking statute. Relying on *Jackson v. Virginia*, 443 U.S. 307 (1979), the defendant insisted that an element of the crime was not proven and thus his right to due process had been violated. *Curtis*, 552 F.3d at 581. We held that the defendant was really disagreeing with the state court's interpretation of state law—namely, that his conduct fit the Illinois stalking statute's definition of "surveillance." *See id.* Accordingly, we rejected his claim as "impermissibly attempting to use a petition for a writ of habeas corpus to press his preferred interpretation of [state] law." *Id.* at 582. The same is true here.

AFFIRMED.

CONLEY, *District Judge*, concurring. Deferring to the opinion of the Wisconsin Court of Appeals, the majority's opinion states that the "instruction *permitted* the jury to find that the touching of separate body parts during the first outing at the lake constituted separate assaults, *not* that such a finding was *required*." (Maj. Op. 6 (emphasis in original).) While concurring in the court's decision to affirm the denial of defendant's petition on other grounds, I write separately because the trial court's supplemental instruction to the jury unconstitutionally foreclosed a finding of simultaneous contact and the majority opinion may be erroneously cited by future litigants for the proposition that a state court may construe away *post hac* defects fundamental in the government's proof of essential elements of the crime charged simply by casting it as a matter of state law.

As quoted more fully by the majority, the trial court instructed in relevant part:

> If the State proved beyond a reasonable doubt that the defendant touched the buttocks of Danielle and that she was under 16 and that it was done with intent to become sexually aroused or gratified, *that is one contact*. If the State proved beyond a reasonable doubt that the defendant touched the vagina of Danielle on the first occasion [and] that she was under 16 and that it was done to become sexually aroused or gratified, *that is a second contact*.

(Emphasis added.) Particularly because this supplemental instruction was given in direct response to a specific question posed by the jury during its deliberation as to whether "the touching of the buttocks or vagina constitute one or two separate charges towards three sexual assaults," this instruction could reasonably be understood by the jury to *direct* it to consider a single toss or throw in the quarry as two contacts—one to the buttocks and one to the vagina. With that framework in mind, the jury was further instructed to decide "if

there were no contacts, *as I have defined that*, or one contact or two contacts or three contacts or four contacts."  (Emphasis added.)

To my reading, while the jury certainly remained free to determine whether the alleged contacts occurred, the trial court effectively decided whether one toss or throw constituted one contact or two contacts as a result of this supplemental instruction.

The Wisconsin Court of Appeals concluded that the evidence supported a finding that the "acts were different in nature and involved a separate volitional choice by [Schweiner]," which permitted "the jury . . . [to] find that Schweiner's decision to touch Danielle's buttocks, followed by his decision to touch her vagina, even within the context of a single toss at the quarry, constituted two separate sexual assaults."  (R2:Attach.E:9.)  But the fact that the jury *could* have found the touches constituted two separate contacts for the purpose of convicting Schweiner of repeated sexual assault of a child, simply does not address the flaw in the court's conclusion:  the supplemental instruction took that finding away from the jury.

The issue posed in Schweiner's petition is not merely a matter of semantics. Schweiner was convicted of engaging in three or more sexual assaults.  While Wisconsin courts may interpret what constitutes a separate sexual assault, that is not what occurred here.  On the contrary, the Wisconsin Supreme Court and the Wisconsin Court of Appeals have already defined what constitutes separate contacts for purposes of § 948.025(1).  *See State v. Eisch*, 96 Wis. 2d 25, 31, 291 N.W.2d 800, 803 (1980) (holding that to constitute a separate contact under § 948.025(1), the contact must be "either separated in time or . . . of a significantly different nature in fact"); *State v. Hirsch,* 140 Wis. 2d 468, 474, 410 N.W.2d 638, 641 (Ct. App. 1987) (citing *Eisch*, holding that "the acts allegedly committed are not 'so significantly different in fact that they may be properly denominated separate crimes'"). By directing the defendant's touch of the buttocks and vagina constituted two separate contacts "even within the context of a single toss," the trial judge prevented the jury from making the very finding it was required to make:  that the touch constituted two separate contacts as defined in *Eisch* and *Hirsch*.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  The right to trial by jury "includes, of course, as its most important element, the right to have the jury, rather than the judge, reach the requisite finding of 'guilty.' "  *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993).

For this reason, the trial court's supplemental instruction violated Schweiner's rights under the Fifth and Sixth Amendments, and as such the Wisconsin Court of Appeals' decision affirming his conviction was "contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The certificate of appealability in this case was limited to "whether the trial court's supplemental instructions permitted conviction without a jury finding beyond a reasonable doubt all facts necessary for conviction in violation of Schweiner's rights to due process." Since Schweiner did not object to the supplemental instruction, however, his only avenue of relief on appeal is through an ineffective assistance of counsel claim. Here, too, I would find for Schweiner. His defense counsel may have made a reasonable decision not to seek a favorable instruction in the first instance on what constitutes a contact, because it might undermine his sole "defense . . . that *none* of them had happened." (App.121 (emphasis added).) But once the jury specifically asked for guidance, there was no longer a tactical or strategic reason for failing to urge the court to instruct the jury that they decide whether touching involved in a single toss constituted one or two contacts.

Still, I conclude that the error was harmless. Danielle testified at trial that Schweiner threw her repeatedly during the trip to the quarry, and that the touching of her buttocks and vagina happened during most of those tosses. Even if the jury had been properly instructed to determine whether a single toss or throw constituted one or two contacts *and* had concluded that a toss constituted just one contact, there was ample evidence of separate, volitional touches, including Danielle's testimony that she was repeatedly tossed or thrown by Schweiner, to allow for a finding of three contacts sufficient to satisfy the elements of this claim. Indeed, it is inconceivable that the jury could have found the victim had told the truth about multiple touches on her first toss, but lied about the many additional tosses she described. On that alternate basis alone, I would affirm the district court's denial of Schweiner's petition. *See O'Neal v. McAninch*, 513 U.S. 432, 437 (1995) ("[If] the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand." (internal citation and quotation marks omitted)).