ORDER
The Wisconsin crime of repeated sexual assault of a child requires proof of at least three separate sexual assaults of the same victim within a specified time. Wis. Stat. § 948.025(1). At Robert Schweiner’s trial for this crime, Danielle D. testified that he sexually assaulted her on three days during the summer of 2002, when she was 13 years old. Regarding the first episode, she described his repeated acts of sexual contact with two of her intimate body parts, and a supplemental jury instruction allowed the jury to consider these as separate assaults. The jury convicted, and Schweiner’s direct appeal was unsuccessful.
In state postconviction proceedings, Schweiner claimed that the supplemental instruction omitted a key concept in Wisconsin law that near-simultaneous sexual contacts with separate body parts do not count as separate sexual assaults. This omission, he argued, allowed the jury to convict him without proof of every element of the crime, in violation of his right to due process[2] The Wisconsin trial and appellate courts rejected this argument, finding that the instruction adequately stated the law based on the evidence presented at trial. Having exhausted his state remedies, Schweiner petitioned the federal court for a writ of habeas corpus. A magistrate judge denied relief, and Schweiner appealed.
We affirm. Schweiner’s argument casts a claimed violation of state law — not cognizable on federal habeas review — as a federal due-process violation. Under the Due Process Clause, the prosecution must prove every element of a crime beyond a reasonable doubt, but the elements of the crime are defined by state law. Here, the state appellate court held that the supplemental jury instruction was a correct statement of Wisconsin law based on the *752 facts of Schweiner’s case. That conclusion ends our inquiry.
I. Background
In 2002 Schweiner was in a relationship (its precise nature is unclear) with a woman named Kim. Kim’s daughter Danielle, then 13 years old, alleged that Schweiner sexually assaulted her several times that summer. Schweiner was arrested and charged with repeated sexual assault of the same child. See Wis. Stat. § 948.025(1) (1999-2000). To convict, the prosecution was required to prove that Schweiner had sexual contact with Danielle at least three times within a given period of time. See id. If there was evidence of more than three contacts, the jurors had to agree that at least three sexual contacts occurred, but they were not required to agree on which particular contacts were proven. See id. § 948.025(2).
At Schweiner’s trial the prosecutor informed the jury in his opening statement that he would present evidence of three instances of sexual assault. Danielle then testified that Schweiner sexually assaulted her on three different days during the summer of 2002. On the first day, Schweiner took her swimming at a public quarry lake. While they were in the water, he sexually assaulted her under the pretense of playfully tossing her into the air. Danielle testified that when Schweiner threw her up out of the water, he started “feeling up on my bootie,” meaning her buttocks. She said his hands would then “kind of go like towards the front ... like towards my ... vagina.” She said this happened repeatedly while they were swimming.
The second episode took place during another visit to the lake. Again while they were swimming, Schweiner removed Danielle’s swimsuit bottom, grabbed her ankle and pulled her toward him, and inserted his fingers into her vagina. The third episode occurred in Schweiner’s apartment, where he made Danielle masturbate him.
Schweiner took the stand in his own defense. He testified that Danielle concocted her story out of personal spite toward him. He denied the substance of the second and third episodes Danielle described. As to the first episode, he acknowledged tossing Danielle out of the water but claimed it was innocent horseplay.
Based on Danielle’s testimony, the prosecutor shifted course during his closing argument and informed the jury that there were four separate sexual assaults because Schweiner touched two of Danielle’s intimate body parts during the first outing to the lake. The prosecutor explained that “under the law, touching her vagina and touching her buttocks when he’s tossing her in the air are — both of those can be distinct offenses. So you can look at both of those things, but you’re going to have to look at them separately.” The judge instructed the jury on the offense of repeated sexual assault of the same child and also on the lesser-included offense of second-degree sexual assault. A verdict of guilty on the latter crime was appropriate if the jury found that fewer than three sexual contacts occurred.
During deliberations, the jury sent two questions to the judge. The first asked whether “the touching of the buttocks or vagina constitute one or two separate charges towards three sexual assaults.” The second asked, “If we all agree to three of the four charges of the second degree form, does this constitute three sexual assaults and become repeated acts of sexual assault of a child[?]” The judge responded with the following supplemental instruction, to which neither party objected:
*753 If the State proved beyond a reasonable doubt that the defendant touched the buttocks of Danielle ..., that is one contact. If the State proved beyond a reasonable doubt that the defendant touched the vagina of Danielle on the first occasion ..., that is a second contact. If the State proved beyond a reasonable doubt that the defendant touched the vagina of Danielle on the second occasion ..., that is a third contact. If the State proved beyond a reasonable doubt that the defendant intentionally caused or allowed Danielle to do the touching of ... the penis of the defendant ..., that is a fourth contact. It is for you to decide if there were no contacts, as I have defined that, or one contact or two contacts or three contacts or four contacts. If you find three or more contacts, as I have defined them ..., that makes up the offense of repeated acts of sexual assault of a child.
Minutes later, the jury returned its verdict, finding Schweiner guilty of the charged crime of repeated sexual assault of the same child. The judge sentenced him to 20 years in prison and 20 years of extended supervision. The court of appeals affirmed, and the state supreme court denied review.
Schweiner then sought state postconviction relief, asserting that the trial court’s supplemental instruction permitted the jury to convict him without finding every element of the offense. He pointed out that under Wisconsin law, simultaneous or near-simultaneous acts of sexual contact with separate intimate body parts are not considered separate sexual assaults. He argued that the supplemental instruction required the jury to consider the near-simultaneous sexual contacts during the first episode at the lake as separate sexual assaults. Because jurors did not have to indicate which sexual contacts the prosecution had proven, it was possible that one or more of them found that he had sexually assaulted Danielle three times but that two of the assaults were the near-simultaneous sexual contacts during the first episode at the lake. Therefore, Schweiner argued, the jury might have convicted him of repeated sexual assault even though the jurors agreed only on two sexual assaults. The trial court denied the postconviction motion, and Schweiner appealed.
The Wisconsin Court of Appeals acknowledged that simultaneous sexual contacts could not be considered separate assaults but rejected Schweiner’s assertion that the first episode at the lake necessarily involved allegations of simultaneous contacts:
[The] evidence indicates that even if both contacts occurred within the context of a single toss, Schweiner engaged in two separate volitional acts, including a conscious decision to squeeze and rub Danielle’s buttocks with his hand, and a conscious decision to move his hand forward to touch her vagina before tossing her.
The court concluded that “[t]he trial court’s supplemental instruction therefore did not misstate the law when it instructed the jury that it could find four separate contacts.” The appellate court affirmed the trial court’s denial of postconviction relief, and the Wisconsin Supreme Court denied review.
Schweiner then petitioned the federal district court for a writ of habeas corpus. A magistrate judge presiding by consent, see 28 U.S.C. § 636(e)(1), denied the petition. The judge began by questioning whether the petition raised a question of federal law and ultimately assumed without deciding that it did. The judge then concluded that habeas relief was unwarranted because the trial court’s supplemental instruction “ma[de] clear that the jury could, but was not required to, view the single-toss/hand-to-buttock touching *754 and the hand-to-vagina touching as separate sexual assaults.”
We granted a certificate of appealability on the issue of whether the instruction violated Schweiner’s federal constitutional right to due process.
II. Discussion
A person in custody pursuant to a state-court conviction may petition for a writ of federal habeas corpus “only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.” 28 U.S.C. § 2254(a); see Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. 475,116 L.Ed.2d 385 (1991) (“ ‘[Federal habeas corpus relief does not lie for errors of state law.’ ” (quoting Lewis v. Jeffers, 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990))); Corcoran v. Wilson, 651 F.3d 611, 613 (7th Cir.2011). As a result, state-law violations “are cognizable only if they resulted in fundamental unfairness and consequently violate a petitioner’s constitutional rights.” McGuire, 502 U.S. at 72, 112 S.Ct. 475; Lechner v. Frank, 341 F.3d 635, 642 (7th Cir.2003). Schweiner conceptualizes his claim as a violation of federal due process. But such a claim merits federal habeas relief “only if the state court committed an error so serious as to render it likely that an innocent person was convicted.” Permquet v. Briley, 390 F.3d 505, 510 (7th Cir.2004).
Of course, Schweiner is correct that “the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.” In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Accordingly, jury instructions that relieve the State of its burden of proof violate due process. Carella v. California, 491 U.S. 263, 265, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (per curiam). Schweiner argues that the trial court’s supplemental instruction allowed the jury to convict him without finding three distinct sexual contacts, as required for the crime of repeated sexual assault of the same child. See Wis. Stat. § 948.025(1) (1999-2000).
Under Wisconsin law two near-simultaneous sexual contacts generally cannot constitute separate sexual assaults. See State v. Hirsch, 140 Wis.2d 468, 410 N.W.2d 638, 641 (Wis.Ct.App.1987). In Hirsch the prosecutor charged the defendant with three counts of sexual assault for touching the victim’s vagina, buttocks, and vagina a second time with “little, if any, lapse of time between the alleged acts.” Id. The Wisconsin Court of Appeals held that convicting the defendant of three separate counts of sexual assault based on the near-simultaneous contacts violated double jeopardy. Id. The court drew on State v. Eisch, 96 Wis.2d 25, 291 N.W.2d 800, 805 (1980), in which the Wisconsin Supreme Court held that it is fundamentally unfair for a defendant “to be charged, tried, or convicted for offenses that are substantially alike when they are a part of the same general transaction or episode.” See Hirsch, 410 N.W.2d at 641.
This case is different. Here, the state appellate court held that “[t]he trial court’s supplemental instruction ... did not misstate the law when it instructed the jury that it could find four separate contacts.” The court noted Danielle’s testimony that Schweiner committed two distinct sexual acts in the process of tossing her out of the water, “including a conscious decision to squeeze and rub Danielle’s buttocks with his hand, and a conscious decision to move his hand forward to touch her vagina.” The court rejected Schweiner’s comparison to Hirsch because Schweiner “had time to reflect on his conduct and commit himself to having sexual contact with a second intimate body part of Danielle’s.”
*755 Schweiner zeros in on the appellate court’s explanation that Danielle’s testimony and the trial court’s supplemental instruction permitted the jury to find that the contacts with separate body parts were independent and therefore distinct sexual assaults. Because the instruction did not tell the jurors that simultaneous or near-simultaneous contacts could not be separate sexual assaults, Schweiner argues that the trial court effectively removed an issue of fact from the jury. We disagree. The appellate court held that the evidence and the instruction permitted the jury to find that the touching of separate body parts during the first outing at the lake constituted separate assaults, not that such a finding was required. That is, the court held that the instruction was an accurate statement of the law in the context of the facts of the case and did not allow the jury to convict Schweiner of repeated sexual assault based on simultaneous sexual contacts.
The flaw in Schweiner’s argument is its premise that Danielle’s testimony about his conduct during the first visit to the lake necessarily described a single act of sexual assault. The trial judge emphasized in the supplemental instruction that it was the jury’s role to decide “if there were no contacts, as I have defined that, or one contact or two contacts or three contacts or four contacts.” The instruction, the state appellate court held, was a correct statement of Wisconsin law in the context of the facts of the case. We are bound by this interpretation of state law. See McCloud v. Deppisch, 409 F.3d 869, 874-75 (7th Cir.2005); Lechner, 341 F.3d at 642 (citing Wainwright v. Goode, 464 U.S. 78, 84, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983)).
Schweiner’s argument resembles one we rejected in Curtis v. Montgomery, 552 F.3d 578 (7th Cir.2009), a habeas case challenging a conviction for the Illinois crime of aggravated stalking, which requires the prosecutor to prove that the defendant placed the victim under surveillance on at least two occasions. Id. at 581. The defendant argued that the prosecution failed to prove a second act of “surveillance” as that term is defined in the Illinois stalking statute. Relying on Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the defendant insisted that an element of the crime was not proven and thus his right to due process had been violated. Curtis, 552 F.3d at 581. We held that the defendant was really disagreeing with the state court’s interpretation of state law — namely, that his conduct fit the Illinois stalking statute’s definition of “surveillance.” See id. Accordingly, we rejected his claim as “impermissibly attempting to use a petition for a writ of habeas corpus to press his preferred interpretation of [state] law.” Id. at 582. The same is true here.
AFFIRMED.

. Schweiner also claimed that his trial attorney’s failure to object to the instruction constituted ineffective assistance of counsel. Because we granted a certificate of appealability solely on the due-process issue, we will refer only to that claim.